626 A.2d 425

NANCY MCKEOWN–BRAND, PLAINTIFF–APPELLANT,
v. TRUMP CASTLE HOTEL & CASINO,
DEFENDANT–RESPONDENT.

Argued November 10, 1992—Reargued March 15, 1993.

Decided July 1, 1993.

*Mary J. Maudsley* argued the cause for appellant (*April & Maudsley*, attorneys).

*Paul A. Tufano* argued the cause for respondent (*Blank, Rome, Comisky & McCauley*, attorneys; *Mr. Tufano* and *Rachel S. Miller*, on the brief).

The opinion of the Court was delivered by

POLLOCK, J.

This case, like its companion case, *Lewis v. Lewis*, 132 *N.J.* 541, 626 *A.*2d 422 (1993), also decided today, requires that we review *N.J.S.A.* 2A:15–59.1. In general, that statute allows the award of attorney's fees to a prevailing party in a lawsuit if the non-prevailing party asserts a claim or defense "in bad faith, solely for the purpose of harassment, delay or malicious injury," *N.J.S.A.* 2A:15–59.1b(1), or if "[t]he nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law

or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law," *N.J.S.A.* 2A:15–59.1b(2). Because the statute implicates both the regulation of practice and procedure and also the discipline of attorneys, a question arises whether it breaches the separation of powers between the judicial and legislative branches of government.

The Law Division held that the complaint violated the statute by failing to state a cause of action that had a reasonable basis in law or equity. In an unreported opinion, the Appellate Division affirmed. We granted the petition for certification of plaintiff, Nancy McKeown–Brand, 127 *N.J.* 566, 606 *A.*2d 376 (1992), and hold that to the extent that *N.J.S.A.* 2A:15–59.1 applies to parties, the statute, as interpreted in this opinion, is valid. We decline to extend the statute to apply to the award of counsel fees and costs against attorneys. A contrary interpretation would raise questions whether the statute impinges on this Court's exclusive power to discipline attorneys. *N.J. Const.* art. VI, § 2, ¶ 3. Finally, we hold that plaintiff did not act in bad faith in asserting her claim. Consequently, we reverse the judgment of the Appellate Division.

Like the Legislature, we are concerned about the role of lawyers in frivolous lawsuits. Because we share the Legislature's concern, we request our Committee on Civil Practice to review the matter and consider appropriate amendments to the Rules of Court.

–I–

From January 1986 through January 1987, plaintiff worked for defendant, Trump Castle Hotel & Casino, first as a front-desk supervisor and then, after a promotion, as a reservations manager. When hired, she signed both an employment-application release and an acknowledgment in the employee handbook. The acknowledgment confirmed that plaintiff's employment was at-will and was subject to termination by defendant at any

time. On January 22, 1987, plaintiff took a leave of absence due to medical complications arising from her pregnancy.

Although her maternity leave ended on May 4, 1987, plaintiff requested, and defendant granted, an extension until May 30, 1987. She then requested a personal leave of absence until June 30, 1987, and a further extension until July 30. Defendant granted the requests, but required each time that plaintiff sign a "Request for Leave of Absence," which provided:

I understand and will comply with the following:

1. I will be reinstated to my same, or similar job provided

(a) my job has not been permanently filled or eliminated because of business requirements, or

(b) my job duties and responsibilities do not change significantly during my absence, and upon my return I am still qualified to perform such changed responsibilities, and

(c) I return before this leave expires.

Plaintiff asserts that her supervisor orally assured her that she could return to her position as a reservations manager. In her deposition, however, plaintiff testified that at the time of her initial leave of absence, the supervisor merely had identified the person who would "run" or "take care of [her] department" until plaintiff's return.

When plaintiff returned to work on July 30, 1987, her supervisor stated that her position had been permanently filled. The supervisor sent plaintiff to personnel to discuss comparable positions. The record is unclear whether no such positions were available or whether plaintiff failed to pursue them. Plaintiff asserts that the personnel department promised to inform her of suitable positions, but never did so.

On July 19, 1989, plaintiff filed a two-count complaint. In the first count, she alleged that defendant had breached her employment contract, the conditions set forth in the employee handbook, and defendant's oral guarantees of reinstatement. The second count, which was based on promissory estoppel, alleged that defendant had assured plaintiff that she would have continued employment and that plaintiff had relied on those representations to her detriment.

Defendant served plaintiff's counsel with a demand for service of documents, a request for production of documents, interrogatories, and a notice of depositions. Plaintiff did not respond. Defendant thereupon moved for summary judgment. Plaintiff did not file any answering papers, and her attorney did not appear on the return date of the motion. The Law Division granted defendant's motion in December 1989. Plaintiff did not appeal.

In January 1990, plaintiff finally answered defendant's interrogatories and moved to reinstate her complaint. The Law Division granted her motion. During her subsequent deposition, plaintiff admitted that she had read and understood the acknowledgments in both her employment application and in the handbook. She admitted further that she had not foregone any job opportunities because of defendant's representations. At some point everyone recognized that plaintiff's claimed damages did not exceed $2,000.

The parties dispute certain events that transpired after plaintiff's deposition. Plaintiff's attorney contends that she forwarded an offer to defendant's attorney to settle for $2,000, and that defendant's only response was its motion for summary judgment. The attorney explains her failure to respond to the motion by asserting that the damages were too insignificant to justify a response. She argues further that her failure to respond does not indicate that the complaint lacked legal merit.

Defendant's attorney, in contrast, claims that he twice asked plaintiff's counsel to file a voluntary dismissal of the complaint. He also informed her that he would move for summary judgment and counsel fees under *N.J.S.A.* 2A:15–59.1. Because plaintiff's counsel refused to file a voluntary dismissal, he was forced to prepare the summary-judgment motion.

On January 10, 1991, defendant moved for counsel fees under *N.J.S.A.* 2A:15–59.1, which provides:

a. A party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and

reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.

b. In order to find that a complaint, counterclaim, cross-claim or defense of the nonprevailing party was frivolous, the judge shall find on the basis of the pleadings, discovery, or the evidence presented that either:

(1) The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or

(2) The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

c. A party seeking an award under this section shall make application to the court which heard the matter. The application shall be supported by an affidavit stating in detail

1. The nature of the services rendered, the responsibility assumed, the results obtained, the amount of time spent by the attorney, any particular novelty or difficulty, the time spent and services rendered by secretaries and staff, other factors pertinent in the evaluation of the services rendered, the amount of the allowance applied for, an itemization of the disbursements for which reimbursement is sought, and any other factors relevant in evaluating fees and costs; and

2. How much has been paid to the attorney and what provision, if any, has been made for the payment of these fees in the future.

The Law Division held that the complaint was frivolous under subsection b(2) because it was "without any reasonable basis in law or equity." It found that the employment application and employee-handbook acknowledgment, both of which plaintiff had signed, precluded her breach-of-contract claim. It further found that the handbook's warning that it did not create an enforceable promise precluded any claim of promissory estoppel. The court stated:

Plaintiff filed this lawsuit against the defendant despite the very clear contractual provisions between the parties, which contractual provisions clearly indicated that there was no cause of action. Plaintiff was lackadaisical with respect to her prosecution of this lawsuit, i.e. the dismissal, and did not even see fit to oppose the Motion for Summary Judgment despite the fact that the return date was postponed in order to give plaintiff an opportunity to respond thereto.

I am satisfied that this lawsuit was a frivolous lawsuit within the meaning of N.J.S.A. 2A:15–59.1b(2) [because] it was filed without any reasonable basis in law or equity.

Consequently, the court assessed counsel fees and costs totalling $10,959.88 against plaintiff. The court denied plaintiff's motion for reconsideration.

The Appellate Division sustained the Law Division's conclusion that the complaint was frivolous. It also concluded that the disclaimers signed by plaintiff undermined her breach-of-contract claim. The court rejected plaintiff's argument that if she had been allowed to pursue her claim, she could have proved that defendant had not shown that it had "permanently filled [her position] because of business requirements," as required by the requests for leave of absence signed by plaintiff. It pointed out that the provisions in the requests had not been included in plaintiff's original employment contract and that she had not proven that she took her leave of absence in reliance on them.

The court concluded:

[P]laintiff's attorney should have known before commencing her law suit that the legal basis of her claim was insubstantial and that her financial loss did not exceed $2000, an amount she herself found too insignificant to warrant this litigation. In our view, the trial judge correctly applied *N.J.S.A.* 2A:15–59.1 to require plaintiff to reimburse defendant for the litigation costs of suing first and thinking later. (Footnote omitted.)

In a concurring opinion, Judge King noted that plaintiff had not raised possible constitutional issues implicated by the frivolous-claims statute, including whether the statute impermissibly intruded on the separation of powers, particularly this Court's power to regulate procedure and to discipline attorneys. We begin with an analysis of those issues.

–II–

Article six, section two, paragraph three of the New Jersey Constitution provides: "The Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts. The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted."

Consistent with that provision, in *Winberry v. Salisbury*, 5 *N.J.* 240, 74 *A.*2d 406, *cert. denied*, 340 *U.S.* 877, 71 *S.Ct.* 123, 95 *L.Ed.* 638 (1950), we drew the distinction between substance and procedure, reserving for the judiciary jurisdiction over procedural matters. In the spirit of comity, we have shared our jurisdiction with the Legislature. As we have observed, "the doctrine of separation of powers was never intended to create, and certainly never did create, utterly exclusive spheres of competence. The compartmentalization of governmental powers among the executive, legislative and judicial branches has never been watertight." *In re Salaries for Probation Officers*, 58 *N.J.* 422, 425, 278 *A.*2d 417 (1971).

Article six, section two, paragraph three also vests in this Court the power to discipline attorneys. That power, even more clearly than our power over practice and procedure, is the exclusive province of this Court. This case, therefore, raises the issue whether the statutory provision for the award of counsel fees invades our power over court procedure and attorney discipline.

–A–

From the outset, the award of counsel fees has been considered a procedural matter for the courts. *Busik v. Levine*, 63 *N.J.* 351, 372–73, 307 *A.*2d 571 (1973); *State v. Otis Elevator Co.*, 12 *N.J.* 1, 5, 95 *A.*2d 715 (1953) (construing *Rule* 3:54–7, predecessor Rule to 4:42–9). Generally, to be allowed, any such award must be authorized by the Rules of Court. The source Rule for the award of counsel fees, *Rule* 4:42–9(a), admonishes that "[n]o fee for legal services shall be allowed in the taxed costs or otherwise, except" in limited situations. Implicit in *Rule* 4:42–9(a) is the rejection of the "English rule," which shifts fees from the successful to the unsuccessful litigant, in favor of requiring each litigant to bear his or her own costs. *Iannone v. McHale*, 245 *N.J.Super.* 17, 27, 583 *A.*2d 770 (App.Div.1990). Underlying the rejection of fee shift-

ing is the historical effort to limit abuses in the former Chancery Court in which fees were routinely assessed against the losing party. *Otis Elevator Co., supra,* 12 *N.J.* at 6, 95 *A.*2d 715. Shortly after the adoption of the 1947 Constitution, this Court deleted from our Rules a provision allowing counsel fees as provided "by law." That deletion confirmed "that authority for the allowance of counsel fees is to be found exclusively in [the Rules]." *Id.* at 7, 95 *A.*2d 715.

Included among the exceptions in *Rule* 4:42–9(a)(7) are those "expressly provided by these rules...." Pursuant to that provision, we have adopted Rules allowing the award of counsel fees. For example, fees may be allowed on appeal, *R.* 2:11–4; when a party is required either to move to strike questions or to compel answers to interrogatories because of frivolous actions or dilatory conduct of the adverse party, *R.* 4:17–5(d); as a sanction for failure to comply with an order directing a medical examination, *R.* 4:20–7; or for abuses of discovery procedures, *R.* 4:23–1(c); or for making bad-faith factual allegations in a motion for summary judgment, *R.* 4:46–6; and in an amount not to exceed $750 when, under specified circumstances, a party refuses to settle, *R.* 4:58–2 and –3.

*Rule* 4:42–9(a)(8) recognizes the Legislature's authority to provide for the award of counsel fees. That subsection makes an exception in "all cases where counsel fees are permitted by statute." Pursuant to that subsection, the Legislature has passed numerous statutes allowing the award of counsel fees. Examples are the award of counsel fees in tort claims against public entities to ensure that "claimant is compensated for virtually all of his economic loss," *N.J.S.A.* 59:9–5; for the prevailing party in a claim of discrimination, *N.J.S.A.* 10:5–27.1; as part of treble damages to compensate a victim of consumer fraud for economic loss and to prevent unconscionable commercial practices, *N.J.S.A.* 56:8–19; and under the Environmental Rights Act, in an action against a state or local agency when the party attempting to enforce environmental regulations achieves a "reasonable success on the merits," *N.J.S.A.*

2A:35A–10; *see also* Kevin P. Duffy, *201 New Jersey Counsel Fee Statutes,* 127 *N.J.L.J.* 340 (Feb. 7, 1991) (summarizing statutory provisions allowing counsel fees). Our acceptance of these statutes is consistent with our general approach of accepting legislation affecting procedural matters if it does not conflict with or supersede judicial power.

The award of counsel fees in the cited statutes differs from that in *N.J.S.A.* 2A:15–59.1 because the cited statutes authorize fees as part of the substance of a statutory cause of action. In contrast, *N.J.S.A.* 2A:15–59.1 permits the award of counsel fees due to the improper manner in which a party conducts litigation. To this extent, the statute comes closer to impinging on this Court's constitutional power over procedural matters. Given the recognition of statutory exceptions in *Rule* 4:42–9(a)(8), however, we find that the statute is valid.

–B–

█ Unlike our authority over practice and procedure, which we sometimes share in the spirit of comity, our authority over the discipline of attorneys is not subject to legislative action. This Court's power to regulate attorneys is exclusive. *In re LiVolsi,* 85 *N.J.* 576, 583, 428 *A.*2d 1268 (1981); *State v. Rush,* 46 *N.J.* 399, 411–12, 217 *A.*2d 441 (1966). As we stated in *In re Hearing on Immunity for Ethics Complainants,* 96 *N.J.* 669, 678, 477 *A.*2d 339 (1984):

> [Attorney discipline] is one area, however, in which our constitutional responsibility is so clear as to leave no doubt of our duty to adopt a rule that we think is needed, despite its clear conflict with existing legislation. This Court simply cannot in the least abdicate its responsibility to exercise exclusive power over the disciplining of attorneys.

Notwithstanding the exclusiveness of judicial authority, we have upheld narrowly-circumscribed legislation that touches on attorney discipline. *Knight v. Margate,* 86 *N.J.* 374, 431 *A.*2d 833 (1981). In *Knight,* the Legislature amended the conflicts-of-interest law, *N.J.S.A.* 52:13D–12 to –27, to deal with special problems arising from casinos. The law prohibited certain

public officials, including judges, from certain dealings with casinos. We upheld the law, finding that "the Court could, consistent with its own exclusive constitutional authority, tolerate actions of other branches of government affecting the judicial system, at least in the absence of its own actions." *Knight, supra,* 86 *N.J.* at 390, 431 *A.*2d 833. In upholding the statute, we explicitly noted that our determination of its validity lay solely within our "ultimate power to accept or reject such action...." *Id.* at 391, 431 *A.*2d 833. Such a determination turns on the legitimacy of the Legislature's purpose and on the extent of the encroachment of the statute on judicial prerogative and interests. *Ibid.* In the present case, our concern is not with the purpose of the statute, but with its encroachment on this Court's exclusive power over attorney discipline.

■ At first reading, *N.J.S.A.* 2A:15–59.1a, which allows the award of attorney fees against any other "party," does not apply to attorneys. On closer reading, however, the statute inevitably would involve lawyers. The statute would award fees if "the nonprevailing party knew, or should have known[,] that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." *N.J.S.A.* 2A:15–59.1b(2). Generally, parties rely on their attorneys to evaluate the basis in "law or equity" of a claim or defenses. Although the client determines the objectives of an attorney's representation, the attorney determines the means for pursuing those objectives. *Rules of Professional Conduct, RPC* 1.2(a); *Restatement (Third) of The Law Governing Lawyers* (Draft No. 5, March 16, 1992) at 141 ("the client defines the goals of representation and the lawyer implements them, but each consults with the other").

The present case differs from *Knight, supra,* 86 *N.J.* 374, 431 *A.*2d 833, in which we noted that the disciplinary rules did not overlap the statutory prohibition against associating with a

casino. In *Rule of Professional Conduct* 3.1, we have addressed the issue of an attorney's responsibility for frivolous litigation. That Rule provides:

> A lawyer shall not bring or defend a proceeding, nor assert or controvert an issue therein unless the lawyer knows or reasonably believes that there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.

*Rule* 1:4–5 mandates that attorneys sign pleadings, motions, and briefs. The attorney's signature certifies that the attorney "has read the pleading or motion; that to the best of his knowledge, information and belief there is good ground to support it; that it does not contain scandalous or indecent matter; and that it is not interposed for delay." *R.* 1:4–8. Violation of any of these Rules may result in discipline of the attorney. In sum, through our Rules of Court, we have prohibited attorneys from filing frivolous lawsuits.

A further problem arises from the possibility that a party sanctioned under *N.J.S.A.* 2A:15–59.1b(2) might seek indemnification from his or her lawyer. Indemnification merely provides an indirect method of sanctioning a lawyer for a claim rooted in the statute. The end result of a claim for indemnification would be payment by the lawyer of an award against the client. Such an award, although indirect, would impinge on the judicial power to discipline attorneys. Consequently, even sanctions against a party under b(2) would run afoul of that power. Implicit in that result is our belief that a client who relies in good faith on the advice of counsel cannot be found to have known that his or her claim or defense was baseless.

–III–

We now turn to the other issue flagged by Judge King's concurring opinion, whether the statute violates due process. At a minimum, due process requires notice and an opportunity to be heard "appropriate to the nature of the case." *Mullane v. Central Hanover Trust Co.*, 339 *U.S.* 306, 313, 70 *S.Ct.* 652, 657, 94 *L.Ed.* 865, 873 (1950); *Kaprow v. Board of Educ.*, 131

*N.J.* 572, 583, 622 *A.*2d 237 (1993). To comport with due process, a judicial hearing requires notice defining the issues and an adequate opportunity to prepare and respond. *Nicoletta v. North Jersey Dist. Water Supply Comm'n,* 77 *N.J.* 145, 162, 390 *A.*2d 90 (1978).

Adequate notice and the right to a hearing are fairly implicit in *N.J.S.A.* 2A:15–59.1. *Fagas v. Scott,* 251 *N.J.Super.* 169, 221, 597 *A.*2d 571 (Law Div.1991). The statute provides that an application for counsel fees must be supported with a detailed affidavit of costs. Such an application would inform the non-prevailing party of the facts supporting the requested counsel fee. Any such application, moreover, should be brought by a motion under *Rule* 1:6. The motion generally should be in writing and on notice to the non-prevailing party, *R.* 1:6–2, who may submit an opposing affidavit, to be followed by an appropriate hearing. At the hearing, the movant bears the burden of proving that the non-prevailing party acted in bad faith. Under the statute, a non-prevailing party could rely on the advice of counsel and still act in bad faith solely to harass, delay, or maliciously injure. For example, liability under the statute will attach to a defendant who, while acting under the advice of counsel, tries to defeat a valid claim by asserting a defense in bad faith solely for the purpose of delay. Although the advice of counsel will not necessarily provide a defense to a bad-faith litigant, in many cases, it may constitute an adequate explanation for the assertion of a claim or defense. Any lawyer who counsels a litigant to assert a bad-faith claim or defense in violation of the statute may, of course, be subject to disciplinary sanctions. Conceivably, a dispute could arise between a non-prevailing party and his or her lawyer about the lawyer's advice. If so, the party may retain separate counsel on the motion to assess costs. So construed, the statute satisfies the requirements of due process.

The procedure in the present case conformed to these requirements. Defendant proceeded by motion on notice to plaintiff, who received all the process she was due.

–IV–

The statute is constitutional as applied to a party who files an action "in bad faith, solely for the purpose of harassment, delay or malicious injury...." That construction comports with the express words of the statute, which uses interchangeably the terms "nonprevailing person," *N.J.S.A.* 2A:15–59.1a, and "nonprevailing party," *N.J.S.A.* 2A:15–59.1b and –59.1b(2). The statute omits any reference to attorneys, an omission that stands in marked contrast to frivolous-lawsuit statutes from many other states. *See, e.g., Ala.Code* § 12–19–272 (1992); *Ariz.Rev.Stat.Ann.* § 12–349 (1992); *Cal.Civ.Proc.Code* § 128.5 (West 1992); *Colo.Rev.Stat.Ann.* § 13–17–103 (West 1982); *Fla.Stat.Ann.* § 57.105 (West 1992); *Ga.Code Ann.* § 9–15–14 (Michie 1992); *Idaho Code* § 12–123 (1992); *Kan. Stat.Ann.* § 60–2007 (1991) (attorney liable only for costs attributable to attorney misconduct); *Mass.Gen.Laws Ann. ch.* 231 § 6F (West 1992); *Mich.Comp.Laws Ann.* § 600.2591 (West 1992); *Minn.Stat.Ann.* § 549.21 (West 1992); *Miss.Code Ann.* § 11–55–5 (1991); *Nev.Rev.Stat.* § 18.010 (1991); *Ohio Rev.Code Ann.* § 2323.51 (Anderson 1992); *Okla.Stat.Ann.* tit. 12, § 2011 (1993); *S.C.Code Ann.* § 15–36–10 (Law Co-op 1991); *Tex.Civ.Prac. & Rem.Code Ann.* § 9.012 (West 1993); *Wisc. Stat.Ann.* § 814.025 (West 1992). By limiting the statute to parties, moreover, we avoid declaring the statute unconstitutional as applied to attorneys. Consequently, we confine the imposition of sanctions under the statute to parties.

 Several other interpretative issues remain. Those issues are whether the statute applies to false allegations of fact, the meaning of the term "frivolous," whether the statute is restricted to pleadings, and whether sanctions should be imposed before the conclusion of an action. The legislative history reveals that A. 1086, as originally adopted by the Assembly and Senate in 1986, did not apply to false allegations of fact. Governor Kean conditionally vetoed the bill for several reasons, including the bill's failure to permit the award of fees for

actions based on false allegations of fact. *Governor Thomas H. Kean's Conditional Veto Message*, A. 1086, 2029, 783, and 1260 (Feb. 11, 1987). The Assembly voted to amend the bill to conform to the Governor's veto by adding, among other amendments, that a claim could be deemed "frivolous" if it was "based on false allegations of fact." . The Senate, however, did not vote on the amendments, and the bill died.

In 1988, A. 1316, 203rd Leg., 1st sess., was introduced in the Assembly with amendments to conform to the Governor's conditional veto. See Maureen E. Garde, *New Jersey's Frivolous Claims Statute—Taking a Closer Look*, 23 *Seton Hall L.Rev.* 153, 179 (1992). Once again, the Senate deleted the reference to false factual allegations. This time, Governor Kean, recognizing that the Senate probably would not otherwise approve the bill, signed it into law. Memorandum from Michael R. Cole, Chief Counsel, to Gov. Thomas H. Kean, Re: A. 1316/A. 751 (1988). The legislative history makes clear that the Legislature intended that false allegations of fact would not justify the award of counsel fees, unless they are made in bad faith, "for the purpose of harassment, delay or malicious injury." *N.J.S.A.* 2A:15–59.1b(1).

That history also reveals that the term "frivolous" should be given a restrictive interpretation. The predecessor bill, A. 1086, allowed the prevailing party to recover fees from the non-prevailing party if that party's pleading was "not substantially justified." In the course of the legislative process, the term "frivolous" replaced "not substantially justified." Senate Judiciary Committee Statement to Assembly Committee Substitute for A. 1086, 2029, 783, and 1260 (Oct. 2, 1986). Indeed, the Governor's conditional veto message noted the "bill's restrictive definition of 'frivolous.'" *Governor's Conditional Veto Message, supra.* The replacement of "not substantially justified" with "frivolous" reflects the legislative intent to limit the application of the statute. That limitation is consistent with the premise that in a democratic society, citizens should

have ready access to all branches of government, including the judiciary. See *Iannone, supra,* 245 *N.J.Super.* at 27, 583 *A.*2d 770 (stating that limitation on award of counsel fees "promotes the goal of equal access to the court irrespective of economic status"). In brief, the Legislature resolved the tension between the competing goals of equal access to the courts and the avoidance of the costs of unnecessary litigation by favoring access over cost-avoidance.

In addition, the terms of the statute apply only to complaints, defenses, counterclaims, and cross-claims. Not included are pre-trial discovery or motions, an issue discussed more fully in the companion case, *Lewis, supra,* 132 *N.J.* at 545, 626 *A.*2d at 424.

Finally, the statute allows the award of counsel fees "at any time" during the proceedings. Nothing in the statute, however, divests the trial courts of their discretion in determining the appropriate time to impose sanctions. Hence, a trial court retains the discretion to determine when to impose sanctions. Generally, we think the preferable practice is to wait until the end of the proceedings. At that time, the court can better assess whether the issue is frivolous and can more accurately allocate costs. In making that suggestion, we recognize that cases may arise in which the trial court may not want to defer its determination.

Like the Legislature, we are concerned about the cost that baseless litigation imposes on litigants, the courts, and the public. Others share that concern. The United States Congress has adopted *Federal Rule of Civil Procedure* 11, generally known as "Rule 11," which imposes sanctions on either parties or attorneys involved in frivolous litigation in federal courts. At least thirty-two other states have adopted frivolous-claim statutes or rules that allow the imposition of counsel fees as a sanction against attorneys. N.Y. State Bar Association, *Report of Special Committee to Consider Sanctions for Frivolous Litigation in New York State Courts,* 18 *Fordham Urb.*

*L.J.* 3, 34–42 (1990). Consequently, we request that the Committee on Civil Practice consider the circumstances in which courts may impose counsel fees and costs on attorneys who engage in frivolous litigation.

–V–

As the grant of defendant's motion for summary judgment reflects, defendant was entitled to dismissal of the complaint as a matter of law. The grant of that motion, however, does not predetermine that plaintiff "commenced, used or continued" her complaint "in bad faith, solely for the purpose of harassment, delay or malicious injury" in violation of *N.J.S.A.* 2A:15–59.1b(1). Her attorney's uncontested affidavit states in part:

> 2. I advised the plaintiff at all times that she had a viable complaint, based on the defendant's representations to her that her position would be temporarily filled during her absence for maternity leave, and that she could return to it at the end of her maternity leave.

> \* \* \* \* \* \* \* \*

> 4. The plaintiff at all times acted on my advice, and would not have filed this complaint had I not advised her that she had a valid cause of action based on the facts as she understood them.

Although reliance on the advice of counsel will not insulate a party who acts in bad faith, we cannot find that plaintiff so acted. Perhaps her attorney should have been more careful. As the Appellate Division found, "In this case, plaintiff's attorney should have known before commencing her lawsuit that the legal basis of her claim was insubstantial and that her financial loss did not exceed $2000." The attorney's failings, however, may not be imputed to the client. Plaintiff's conduct bespeaks an honest attempt to press a perceived, if ill-founded, claim. She disclosed the relevant facts to her attorney and in good faith relied on the attorney's advice. Although misguided, plaintiff did not act in bad faith.

The judgment of the Appellate Division is reversed.

*For reversal*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.