284 N.J. Super. 133 (1995)
663 A.2d 1373
DEUTCH & SHUR, P.C., A PROFESSIONAL CORPORATION, PLAINTIFF,
v.
EDWIN ROTH, DEFENDANT.
Superior Court of New Jersey, Law Division Middlesex County.
Decided March 3, 1995.
*134 Victor A. Deutch, for plaintiff (Deutch & Shur, P.C., attorneys).
LONGHI, A.J.S.C.
This is a motion made pursuant to the Frivolous Litigation Statute, N.J.S.A. 2A:15-59.1. Plaintiffs Deutch & Shur, P.C. seek to recover fees and costs incurred in defending a counterclaim for legal malpractice brought by defendant Edwin Roth, a former client. No one has responded or appeared on behalf of the defendant Edwin Roth with regard to this motion.
Deutch & Shur represented Mr. Roth in a claim for insurance proceeds arising from an explosion that destroyed his house. The policy required that Roth submit to an oral proof-of-loss examination under oath. Pursuant to the terms of the insurance policy any misrepresentation by the insured precludes coverage. During *135 the examination, Roth was asked if he had ever been charged with or convicted of a crime. Defendant testified that he had never been arrested or convicted of a crime.[1] In fact, he had been indicted on thirty-five counts of insurance fraud and convicted on four. The trial court found that defendant lied at the proof-of-loss examination when he testified under oath that he had never been charged with or convicted of a crime and entered summary judgment against defendant in the insurance claim. The grant of summary judgment was upheld in the Appellate Division.
Subsequently, plaintiffs sought to collect legal fees due and owing from its representation of Roth in the insurance claim. In May of 1992, plaintiffs notified defendant of the fee arbitration option.[2] Defendant did not exercise this option. As a result, plaintiffs, acting pro se, commenced an action in October of 1992 to recover legal fees. Defendant did not appear or answer the complaint. Ultimately, default judgment was entered in plaintiffs' favor for $10,970.68. A Writ of Execution was issued and a levy was effected on defendant's airplane in January of 1993.
In February of 1993, defendant successfully moved to have the judgment vacated. Defendant then filed an answer and counterclaim alleging legal malpractice. Roth alleged that he did not understand the question posed to him regarding prior charges and convictions and that plaintiffs had failed to adequately assert this point in opposition to the summary judgment motion. Specifically, it was asserted that the plaintiffs knew about and failed to utilize *136 information possessed by Jack Gold, Esq., the defendant's attorney in the prior criminal matter, which would have raised a factual issue and precluded entry of summary judgment against the defendant in the underlying insurance matter. In support of the counterclaim, defendant submitted a certification from Gold. Gold, under oath, said that "[d]uring the pendency of those charges we had numerous discussions wherein Mr. Roth became aware of the maximum fines and penalties ... assuming conviction." Nonetheless, Mr. Gold also certified, "I really believe that Mr. Roth didn't think he was convicted of a crime ...". It was Roth's contention that Deutch & Shur had an obligation to utilize this information to place into question whether Roth knew he had been charged with or convicted of a crime.
In January of 1994, this court found that "nobody in the world would believe" defendant's assertion that he did not know he was charged with or convicted of a crime, and granted plaintiff's motion to strike defendant's legal malpractice claim for failure to state a claim upon which relief can be granted. In an opinion from the bench, this court said:
He was indicted, 35 counts.... [T]he very document that he wants to rely on to support his claim for legal malpractice and to support his defense of this motion tells me that the lawyer sat down and explained to him all 35 counts, what the charges were, what the maximum penalties were and what the maximum fines were.
........
If that doesn't tell [the defendant] that he was charged with a crime, that he got away with a bigger crime and found guilty of a lesser crime, I don't know what it is.
........
If he tells me that he didn't understand that [he was charged with or convicted of a crime] ... that is so unworthy of belief that it's not worth giving it any credibility at all as a matter of law.
Additionally, summary judgment was entered in plaintiff's favor on its own claim. Plaintiff was awarded $10,970,68, the same amount as had been awarded in the default judgment nine months prior. The Appellate Division, in an unreported decision, upheld *137 this court's disposition of the claim and counterclaim, saying the following in regard to the counterclaim:
The counterclaim in the present matter asserts malpractice only by way of failure to present the Gold materials on the question of Roth's understanding of whether he had been "convicted." The relevant inquiry was, as recognized by the motion judge, whether Roth misrepresented that he had never been charged with a crime. Gold's certification is more than unhelpful to Roth, it is irremediably damning in that it establishes Roth's own admission of full awareness that he had been charged with multiple crimes of insurance fraud.
Submitting such a certification in the underlying matter would only have served to further support the grant of summary judgment to the insurers.
[Deutch & Shur v. Roth, A-3414-93T2 (App.Div. December 9, 1994).]
Plaintiffs now seek legal fees and reimbursement of costs expended in defense of the legal malpractice claim, pursuant to N.J.S.A. 2A:15-59.1, in the amount of $10,886.94. Plaintiff's application for counsel fees is granted.
In disposing of this motion, the court is faced with two issues. The first issue is whether filing the counterclaim constituted the conduct of "frivolous litigation" as contemplated by N.J.S.A. 2A:15-59.1. The second issue is whether the movant, an attorney acting pro se in the underlying claim, can recover fees under the statute. Both are resolved in the affirmative.
N.J.S.A. 2A:15-59.1 b allows the court to award attorneys fees to a prevailing party when the non-prevailing party has conducted "frivolous litigation." Under the statute, "frivolous litigation" has been brought when:
(1) The ... counterclaim ... was ... used or continued in bad faith, solely for the purpose of harassment, delay, or malicious injury; or
(2) The nonprevailing party knew or should have known that the ... counterclaim ... was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law.
As a preliminary matter, it should be noted that questions have been raised as to the constitutional validity of the latter category. Article VI of the New Jersey State Constitution vests in the judiciary the exclusive power to regulate and discipline attorneys. N.J. Const. art. VI, § 2, ¶ 3. The Supreme Court has stated that N.J.S.A. 2A:15-59.1 b(2) invades the judiciary's jurisdiction by indirectly regulating attorneys. McKeown-Brand v. Trump Castle *138 Hotel & Casino, 132 N.J. 546, 626 A.2d 425 (1993). At first reading, N.J.S.A. 2A:15-59.1 b(2) applies to the "party," not to lawyers. Id. at 557, 626 A.2d 425. However, insofar as the party generally relies on the attorney to evaluate the basis of a claim or defense, subparagraph b(2) regulates the conduct of the attorney. Ibid. Moreover, insofar as the client may seek indemnification against the attorney for sanctions, the statute disciplines the attorney. Id. at 558, 626 A.2d 425.
If "frivolous litigation" is to be found, the claim must fall within the "bad faith" prong. The inquiry is whether "[p]laintiff's conduct bespeaks an honest attempt to press a perceived, if illfounded, claim." Id. at 563, 626 A.2d 425. In McKeown, plaintiff was an employee who left on maternity leave only to find her job filled when she returned. Plaintiff brought claims for breach of contract and promissory estoppel, alleging that, prior to taking her leave, she was orally assured that she could return to her position. However, when hired, plaintiff had signed an acknowledgement in the employee handbook which confirmed that plaintiff's employment was at-will. Moreover, plaintiff signed a "Request for Leave of Absence" which stated that plaintiff would be reinstated unless her job was permanently filled. The trial court found that "the employment application and employee-handbook acknowledgement, both of which plaintiff had signed, precluded her breach of contract claim." Moreover, the promissory estoppel claim was found not viable since the employee-handbook clearly stated that it did not create an enforceable contract.
The Supreme Court held that, taking into account the totality of plaintiff's conduct, the plaintiff did not act in bad faith. Id. at 563, 626 A.2d 425. The Court stated that reliance on the advice of counsel does not constitute a defense where a party has acted in bad faith. Ibid. However, good faith reliance on such advice may be indicative of a lack of bad faith in bringing the claim. Ibid. The Court found that plaintiff merely relied on her attorney's advice that she had a legitimate claim and the plaintiff should not be punished for her attorney's failings. Ibid. Looking at plaintiff's *139 conduct as a whole, the Court found the plaintiff's conduct indicated an "honest attempt to press a perceived ... claim." Ibid.
Unlike the plaintiff in McKeown, the defendant in this case prosecuted his claim in "bad faith." First, it was not until plaintiff had levied upon defendant's personal property that defendant took any action in this case, whether defending against the claim or bringing the counterclaim. Second, unlike the plaintiff in McKeown, the defendant in this case had absolutely no basis for believing that he somehow had been wronged by the plaintiffs. In McKeown, one can at least understand the plaintiff's frustration in finding her job filled, whether or not the law afforded her a remedy. In the within matter, it is hard to see what purpose this counterclaim served except to "scare" the plaintiff into compromise or to make collection more expensive. The fact that the defendant may have relied on counsel is in no way dispositive of the issue. Such reliance must be in good faith. I find that defendant could not have sincerely believed that he had a legitimate claim against his former counsel.
In the end, judging the defendant's conduct as a whole, I conclude that the defendant's counterclaim was brought in bad faith, for the purpose of delay and harassment. Therefore, defendant's counterclaim constitutes "frivolous litigation" under N.J.S.A. 2A:15-59.1.
The second issue that arises is whether the movant can recover attorney's fees under the statute. In a very recent 1995 decision, a court in the Law Division held that an attorney who represents himself pro se and does not render services for the benefit of anyone else in the litigation is not entitled to attorney's fees under N.J.S.A. 2A:15-59.1 after having prevailed in the action. Asaadi v. Meltzer, 280 N.J. Super. 68, 654 A.2d 506 (Law Div. 1994). The court based its holding on its reading of the statute. Specifically, subparagraph c of the statute lists the procedure a party must follow to comply with the statute. A *140 party seeking to recover fees expended in defense of a frivolous claim must submit an affidavit detailing the following:
"(1) The nature of services rendered, the responsibility assumed, the results obtained, the amount of time spent by the attorney, any particular novelty or difficulty, the time spent and services rendered by secretaries and staff, other factors pertinent in the evaluation of the services rendered, the amount of the allowance applied for, an itemization of the disbursements for which reimbursement is sought, and any other factors relevant in evaluating fees and costs; and (2) How much has been paid to the attorney and what provision, if any, has been made for the payment of these fees in the future."
[N.J.S.A. 2A:15-59.1c (emphasis added).]
The court concluded that the requirement in subparagraph c(2) was inconsistent with the notion that the Legislature intended that pro se litigants recover under the statute. As additional support for the holding the court cites to a 1927 chancery court case which held that attorney's fees could not be awarded when an attorney does not act for the benefit of another. Henn v. Clifford J. Heath, Inc., 101 N.J. Eq. 347, 139 A. 406 (Ch. 1927).[3]
I respectfully disagree with the holding in Asaadi.
N.J.S.A. 2A:15-59.1 should not be interpreted to bar recovery by an attorney acting as a pro se litigant. It has always been the law of this jurisdiction that where an attorney is a party to an action, and obtains a judgment in his favor, he is entitled to the same costs as if he had conducted the action for some other person. Drake v. Berry, 42 N.J.L. 60 (Sup.Ct. 1880). A statute should not be interpreted to change a longstanding rule or principle unless the statute manifests a clear intent to do so. Elberon Bathing Co. v. Ambassador Insurance Co., 77 N.J. 1, 389 A.2d 439 (1978). The court in Asaadi points to the requirements in subparagraph c(2) as manifestation of an intent to distinguish between classes of litigants. Assuming arguendo that that is a proper interpretation of the subparagraph c(2), the language of the *141 statute still falls well short of manifesting a clear intent to alter the long-standing principle that an attorney acting pro se can recover attorney's fees in the same way as a represented litigant can.
In fact, it is more probable that the Legislature simply did not consider this scenario at the time of drafting. The legislative history reveals nothing to indicate that the Legislature considered whether to exclude pro se litigants from being able to recover under the statute. As such, it is pointless to parse through the language of the statute when it is apparent that the Legislature simply did not contemplate this issue.
Either way, the more fruitful analysis lies in considering the purpose of the statute and deciding whether the purpose militates towards differential treatment of pro se litigants. See Del. Riv. & Bay Auth. v. N.J. Pub. Emp. Rel. Com., 112 N.J. Super. 160, 164, 270 A.2d 704 (App.Div. 1970) (courts should gather the intent of a statute from the purpose of the legislation and not be guided by a single sentence in the statute.) The purpose of the statute is twofold. At step one, the statute serves a punitive purpose, seeking to deter frivolous litigation. Weed and Weed v. Casie Enterprise, 279 N.J. Super. 517, 653 A.2d 603 (App.Div. 1995); Iannone v. McHale, 245 N.J. Super. 17, 583 A.2d 770 (App.Div. 1990). Given this goal, one cannot conceive of a reason why the Legislature would distinguish between pro se litigants and those represented by an attorney. Why should the prosecutor of a frivolous claim be let off the hook simply because the victim of the litigation represented himself? How is the purpose of deterrence less served by compelling the offending party to make payment to a pro se party? At step two, the statute seeks to compensate the party that has been victimized by the party bringing the frivolous litigation. Assembly, No. 751 State of New Jersey, Sponsor Statement, A. 1316 (1988). It cannot be argued that plaintiffs have not expended something for which they deserve to be compensated. An attorney representing himself expends time. The old adage that "Time is money" has no greater *142 validity than in an attorney's world. The time spent by an attorney defending a frivolous claim could have been spent working on a matter for a paying client.
Finally, from a practical standpoint, an attorney in the movants' position should be allowed to recover pursuant to the Frivolous Litigation Statute. Otherwise, an attorney would have a very difficult time collecting fees for representation from an uncooperative client. A client who does not want to pay simply will assert frivolous counterclaims making recovery by the attorney prohibitively expensive. In the within matter, the time and effort expended by the movant from the time the judgment was vacated to the present is almost equal in dollars to the value of the underlying claim. Thus, if the movants were foreclosed from recovering under the statute, they would then essentially have received nothing for the legal services provided the defendant in the insurance matter.
Having reviewed the certification submitted by the movant regarding the time and effort expended in defense of the counterclaim, I find that the movant is entitled to reimbursement in the amount of $8,373.85. The motion is granted and judgment is entered accordingly.
NOTES
[1] Defendant testified as follows:

Q. Have you ever been charged with a crime?
A. No.  Yeah. I punched my neighbor, that's what I did.
Q. That was the municipal court litigation that your lawyer mentioned earlier?
A. Yeah, right.
Q. But other than that, were you never arrested, charged with a crime, convicted?
A. No. Never spent a day in jail.
[2] R. 1:20A-3.
[3] The court in Asaadi relied on a 1927 chancery court case which held otherwise. The court in that 1927 case noted a split between the Supreme Court and a chancery court on this issue. The court then followed the chancery court view.