**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1621-22

P.J.L.,[1]

    Plaintiff-Appellant,

v.

E.F.N., ESQ.,

    Defendant-Respondent.

_____

> Argued January 14, 2025 – Decided June 2, 2025
>
> Before Judges Sumners and Susswein.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1973-22.
>
> Patricia J. Lee, appellant, argued the cause pro se (Michael Confusione, on points two and three of the brief).
>
> Mark A. Trokan, attorney, argued for respondent (Gordon Rees Scully Mansukhani, LLP, attorneys; Mark A. Trokan, of counsel and on the brief; Alexander L. Bakes, on the brief).

---

[1] We refer to the parties by initials to protect the children's privacy. R. 1:38-3(d)(12), (16).

PER CURIAM

Plaintiff appeals the Law Division order dismissing her complaint against defendant, the guardian ad litem of her two minor children, and sanctioning her to pay defendant's attorneys' fees and costs of $26,713.06 under the Frivolous Litigation Statute (FLS) N.J.S.A. 2A:15-59.1. We affirm.

I

During plaintiff's contentious divorce proceedings with her husband, a Family Part judge appointed defendant, a licensed New Jersey attorney, as their two children's guardian ad litem under Rule 5:8B(a) to assist the judge in determining who would have custody of them. After the judge granted sole legal custody to her husband, plaintiff collaterally attacked the decision by filing two separate self-represented actions in the United States District Court that were subsequently dismissed.[2] Plaintiff, still self-represented, filed this action seeking compensatory and punitive damages against defendant based on claims of negligence, gross negligence, breach of fiduciary duty, intentional infliction

_____

[2] A federal district court judge dismissed plaintiff's judicial misconduct and federal civil rights claims against the Family Part judge due to judicial immunity. A different federal district court judge dismissed plaintiff's habeas petition, filed on the children's behalf, as an improper attempt to relitigate her child custody case in federal court.

of emotional distress, and conspiracy. Plaintiff's salacious allegations included, but were not limited to, claims that defendant "disconnect[ed] any type of custody from [her] . . . to give sole custody to the abusive father," turned a "blind eye" to evidence that the children were "in extreme danger" from her "maniac" husband, forced the children "to see a 'therapist' who locked them in her office if they refused her 'therapy,'" and colluded with the judge "to the detriment of [her] and her minor children."

Defendant moved to obtain an extension of time to file an answer to the complaint. Plaintiff opposed the motion, stating in her letter to the trial judge that "[defendant] should be removed as soon as possible in the underlying case. Therefore, the actions of this instant case [are] to help facilitate this removal."

The day after plaintiff submitted her motion opposition, defendant's counsel sent plaintiff a notice demanding that she voluntarily dismiss her suit because her claims were frivolous and if she did not do so "[defendant] will move for the entry of an appropriate sanction, including all of [defendant's] attorneys' fees." See N.J.S.A. 2A:15-59.1; see also R. 1:4-8. The notice asserted the complaint was meant to harass defendant into stepping down as guardian ad litem and plaintiff's claims were precluded by defendant's immunity and litigation privilege as guardian ad litem. The notice also advised plaintiff that

3

"to the extent you are unsatisfied with [defendant's] services as GAL [(guardian ad litem)], the proper course of action is for you to seek to remove her from her position by way of petition in the [divorce proceedings]."

Before plaintiff responded to the frivolous litigation notice, defendant moved under Rule 4:6-2(e) to dismiss the complaint with prejudice for failure to state a claim upon which relief can be granted. About two weeks later, plaintiff wrote to defendant's counsel advising she would not withdraw her complaint. Plaintiff asserted "this lawsuit [is] a chance for the truth to come out, and whether that results in [defendant's] removal or some other remedy is for the courts to decide."

Following oral argument, the trial judge rendered an oral decision and issued a written order dismissing the complaint with prejudice. The judge determined defendant was entitled to litigation privilege, absolute judicial immunity, and viewing the complaint as a claim for legal malpractice, plaintiff failed to state a cognizable claim for relief. The dismissal was granted with prejudice because the judge determined "no amendment [to the complaint] will cure these pleading defects."

Almost two months later, the trial judge considered whether to impose frivolous litigation sanctions against plaintiff because she refused to voluntarily

withdraw her complaint.[3]  After hearing the parties' arguments,[4] the judge granted the motion and directed defendant's counsel to submit an affidavit of services pursuant to Rule 1:4-8.  The judge expressed reluctance to award defendant the full amount of attorneys' fees defendant incurred, surmising a $5,000 sanction would adequately "send a message to [plaintiff] regarding the inappropriateness of her actions," even if defending the complaint had cost "easily three times that amount."  Nevertheless, the court reserved decision until it reviewed "the totality of the bills" and directed defendant's counsel to provide an affidavit of services setting forth the attorneys' fees and costs she incurred defending plaintiff's complaint.

Defendant's counsel subsequently submitted her counsel's affidavit of services and accompanying invoices totaling $26,713.06 in attorneys' fees and costs defending plaintiff's complaint.  The affidavit also asserted that plaintiff made frivolous complaints against defendant to the police and detailed plaintiff's disclosure of information pertaining to the child custody dispute to third parties

---

[3] Plaintiff appealed the order dismissing her complaint.  However, we dismissed the appeal as interlocutory because defendant's frivolous sanctions motion was pending and plaintiff did not seek leave to appeal.  See R. 2:2-4 and 2:5-6.

[4] Plaintiff retained counsel to represent her at oral argument opposing defendant's sanction application.

which ended up in nine articles on the internet. While the articles did not identify plaintiff, her husband, or their children by name, they all referenced the child custody dispute, describing accurate and intimate details about the proceedings and the individuals involved.[5]

Following argument, the judge rendered an oral decision and issued an order awarding defendant $26,713.06. The judge found plaintiff "unreasonably refused to withdraw" her complaint despite receiving the frivolous litigation notice, which adequately explained why defendant's litigation privilege and absolute judicial immunity barred her claims. The judge cited plaintiff's letter evincing her "intent to coerce [defendant] to voluntarily withdraw from the underlying [child custody] matter as the court-appointed" guardian ad litem. This purpose, according to the judge, was improper and justified sanctions to deter similar suits in the future. The internet articles weighed significantly in the sanctions, because the judge believed plaintiff had shared information about her child custody case, which was sealed by the Family Part judge's court.

---

[5] Six articles were published by a children victims' organization and authored by the organization's founder. Plaintiff's sister wrote the other two articles. Six articles named the custody trial judge, two named defendant, and one contained a drawing of defendant's likeness. One article is presented as a letter from "Protective Mother" to "her child's [g]uardian ad [l]item."

A-1621-22

Plaintiff appeals the orders dismissing her complaint with prejudice and awarding sanctions to defendant.[6]

## II

Plaintiff contends the trial judge improperly dismissed her complaint. Based upon our de novo review of a Rule 4:6-2(e) motion to dismiss, Watson v. N.J. Dep't of Treasury, 453 N.J. Super. 42, 47 (App. Div. 2017), we disagree because even accepting plaintiff's factual allegations as true, they "are palpably insufficient to support a claim upon which relief can be granted." Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010) (quoting Rieder v. State Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987)).

Contrary to plaintiff's argument on appeal, her complaint only alleges conduct related to her underlying child custody case. The judge properly held that the complaint relates to defendant's role as guardian ad litem as her allegations involve defendant's interaction with her, her husband, the children, their children's healthcare providers, or the judge, in the context of the child custody matter. As guardian ad litem, it was defendant's duty to help the judge determine and promote "the best interests of the child" by, at a minimum,

---

[6] Initially, counsel represented plaintiff on appeal. However, counsel later withdrew, resulting in plaintiff's self-representation.

"[i]nterviewing the child[] and [parents];" "[i]nterviewing other persons possessing relevant information;" "[o]btaining relevant documentary evidence;" and "[c]onferring with the [judge]." R. 5:8B(a)(1)-(3), (5). Because plaintiff's allegations speak to defendant's guardian ad litem duties, the litigation privilege shields defendant from plaintiff's suit. The privilege precludes "liability for statements made . . . [during] judicial, administrative, or legislative proceedings by a litigant or other trial participant." Russo v. Nagel, 358 N.J. Super. 254, 265 (App. Div. 2003). It "extends to all statements or communications in connection with the judicial proceeding." Hawkins v. Harris, 141 N.J. 207, 216 (1995) (quoting Ruberton v. Gabage, 280 N.J. Super. 125, 133 (App. Div. 1995)).

Defendant's litigation privilege protection covers not only her conduct but her verbal statements or communications. Our Supreme Court declared the privilege covers an "extraordinary scope," reflecting the "wide degree of discretion" lawyers require to "advance the best interests of the administration of justice" and "perform[] their duties in the course of judicial proceedings." Loigman v. Twp. Comm. of Middleton, 185 N.J. 566, 587-88 (2006).

In addition, plaintiff's complaint is legally insufficient because defendant's role as a court-appointed guardian ad litem entitles her to absolute judicial immunity. We conclude that case law affording absolute judicial

immunity to law guardians and court-appointed experts is instructive and contrary to plaintiff's contention that defendant is not entitled to such immunity.

Law guardians are appointed by the court and form "an integral part of the judicial process" in child custody disputes and "are cloaked with absolute judicial immunity." Delbridge v. Off. of Pub. Def., 238 N.J. Super. 288, 301-02 (Law Div. 1989), aff'd o.b., A.D. v. Franco, 297 N.J. Super. 1 (App. Div. 1993). Similarly, court-appointed experts have absolute judicial immunity because courts must "be able to rely on the [experts'] findings and . . . recommendations," which would not occur if the experts are unwilling or "reluctant to perform their assigned task with complete candor" for "fear of reprisal by parties . . . who are, in the end, disappointed with the result or with the recommendations provided to the court." P.T. v. Richard Hall Cmty. Mental Health Care Ctr., 364 N.J. Super. 546, 557-59 (Law Div. 2000), aff'd o.b., 364 N.J. Super. 460 (App. Div. 2003). Absolute judicial immunity for law guardians and court-appointed experts applies equally for a guardian ad litem.

Like law guardians and court-appointed experts, a court-appointed guardian ad litem "acts as an independent fact finder, investigator and evaluator as to what furthers the best interests of the child." Div. of Youth & Fam. Servs. v. Robert M., 347 N.J. Super. 44, 69 (App. Div. 2002) (citing The Official

9

Comments for <u>R.</u> 5:8A and <u>R.</u> 5:8B). Defendant's guardian ad litem responsibilities with the children entitles her to absolute judicial immunity as she was serving "the function of resolving disputes between parties, or of authoritatively adjudicating private rights." <u>Malik v. Ruttenberg</u>, 398 N.J. Super. 489, 496 (App. Div. 2008) (quoting <u>Antoine v. Byers & Anderson</u>, 508 U.S. 429, 433 n.8 (1993)). Defendant's immunity "attaches at the outset of [the] proceedings" and provides complete protection "from suit." <u>Id.</u> at 496 (quoting <u>Mireles v. Waco</u>, 502 U.S. 9, 11 (1991)). Defendant does not have to be a judge or "law guardian," as plaintiff argues, to be cloaked with absolute judicial immunity given that all the allegations against her relate to her role as guardian ad litem assisting the trial judge in deciding the children's custody.

In addition to the defendant's litigation privilege and absolute judicial immunity, plaintiff's claims essentially constitute a legal malpractice cause of action. Even though plaintiff did not designate these claims as legal malpractice, she asserted defendant owed her damages for violating the Rules of Professional Conduct—the hallmark of a legal malpractice action. <u>See, e.g.</u>, <u>Cortez v. Gindhart</u>, 435 N.J. Super. 589, 607-08 (App. Div. 2014) (subsuming claims of breach of contract and breach of fiduciary duty into a legal malpractice claim where a client sued his lawyer for improper billing). As defendant never

10

represented plaintiff, the parties did not have "an attorney-client relationship creating a duty of care by the defendant attorney." Gilbert v. Stewart, 247 N.J. 421, 442 (2021) (internal quotation and citation omitted). Thus, plaintiff's negligence, gross negligence, and breach of fiduciary duty claims were properly dismissed with prejudice and could not be amended to avoid dismissal because there is no attorney-client relationship establishing a duty defendant owed plaintiff.

III

Plaintiff contends the judge erred in awarding sanctions to defendant. She claims the judge overlooked her explanation that the complaint was not meant to "help facilitate" defendant's withdrawal. She contends she raised the possibility of defendant's removal to stress her emergent concerns that her children's safety warranted denying defendant's request for additional time to file an answer. She argues her reply to the frivolous litigation notice was meant to explain that her complaint sought to uncover the truth behind defendant's conduct towards her children. She contends she did not act in bad faith in filing her complaint and her conduct "bespeaks an honest attempt to press a perceived claim" for "which she advanced colorable legal argument[s] at every step." She cites Tagayun v. AmeriChoice of N.J., Inc., 446 N.J. Super. 570, 580 (App. Div.

11

2016), for the proposition that frivolous litigation sanctions are unwarranted when a party is simply "wrong about the law and loses [their] case."  Lastly, plaintiff argues the trial judge erred by awarding an excessive amount in attorneys' fees and costs and should reduce the award to $5,000.  She contends nothing in the record supported the judge's reasoning for awarding the full amount of reasonable attorneys' fees sought, because the judge relied on articles it baselessly assumed were written, submitted, or approved by her.  She contends she did not write any of them, and the record at best shows the author of one article interviewed her sister.  She points out that nothing in the record showed she made frivolous complaints to the police.

Our Supreme Court recently recognized that "[s]ince its inception, the FLS has served two purposes."  Borough of Englewood Cliffs v. Trautner, ___ N.J. ___ (2025) (slip op. at 11) (citation omitted).  First, the FLS "serves a punitive purpose, seeking to deter frivolous litigation."  Ibid. (quoting Deutch & Shur, P.C. v. Roth, 284 N.J. Super. 133, 141 (Law Div. 1995)).  Second, the FLS "serves a compensatory purpose, seeking to reimburse 'the party that has been victimized by the party bringing the frivolous litigation.'"  Ibid. (quoting Deutch & Shur, 284 N.J. Super. at 141).  The FLS provides that a trial judge may find frivolous litigation where the "nonprevailing party" advanced its claim

in "bad faith, solely for the purpose of harassment, delay or malicious injury," or "knew, or should have known," its claim had no "reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." N.J.S.A. 2A:15-59.1(b)(1)-(2). This is mirrored in our court rules which provide sanctions can be imposed against a self-represented party whose pleading has an "improper purpose, such as to harass" or asserts a claim lacking legal support. R. 1:4-8(a)(1)-(2).

A trial court's decision to order frivolous lawsuit sanctions is reviewed under an abuse of discretion standard. Wolosky v. Fredon Twp., 472 N.J. Super. 315, 327 (App. Div. 2022) (citing McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011)). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Applying these principles, we discern no abuse of discretion in the trial judge's finding that plaintiff's litigation was frivolous, as it was supported by credible evidence in the record and consistent with the law. The trial judge properly rejected plaintiff's attempt to deflect her admission to filing the

complaint to "help facilitate" defendant's withdrawal as guardian ad litem. We see no abuse of discretion in the trial judge's conclusion regarding to plaintiff's purpose for bringing the suit. That finding is amply supported by the record, which had more than "a single line" showing this was plaintiff's true intent. In the same letter where she admitted the suit was meant to "help facilitate" defendant's withdrawal, she wrote, "[defendant] should be removed as soon as possible." Her reply to the frivolous litigation notice reaffirmed her belief that this suit could lead to defendant's dismissal as guardian ad litem. Thus, the judge had "competent, relevant[,] and reasonably credible evidence" to find plaintiff wanted to force defendant to withdraw as guardian ad litem from her child custody case. See Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974) (citation omitted). Plaintiff's unsuccessful actions in the federal courts to overturn the Family Part judge's custody order further indicate the harassing nature of her conduct.

Plaintiff's argument that her complaint did not constitute bad faith is also unavailing. She incorrectly distinguishes her suit from Tagayun, where the plaintiffs brought their claims when the underlying substantive law was unsettled and did not clearly foreclose their legal arguments. 446 N.J. Super. at 578-79. Defendant's frivolous litigation notice to plaintiff clearly explained the

14

litigation privilege and judicial immunity barred her claims because her allegations arose from defendant's performance as the court-appointed guardian ad litem. See R. 1:4-8(b)(1)(ii) (requiring the frivolous litigation notice to "set forth the basis for [the] belief [that the pleading is frivolous] with specificity"); cf. Bove v. AkPharma Inc., 460 N.J. Super. 123, 154 (App. Div. 2019) (reversing sanctions where the defendants' frivolous litigation notice omitted the exact defense "on which [they ultimately] prevailed"). The frivolous litigation notice correctly advised plaintiff that the proper course of action to remove defendant as guardian ad litem was to petition the Family Part judge.

The imposition of frivolous litigation sanctions against plaintiff was not based on her desire to regain custody of her children and ensure their health and well-being. Nor should the sanctions be construed as reflecting the truthfulness of plaintiff's allegations. As the trial court judge aptly observed: "The factual accuracy of the allegations made by plaintiff is not an issue in this litigation or in this motion."

We also do not question the trial judge's consideration of the internet articles criticizing defendant and the child custody proceeding. The judge had a clear sense of plaintiff's varied efforts to harass defendant, which we see no reason to upset. The judge's finding that the articles were further evidence of

plaintiff's harassment was credible. Yet, even without the internet articles, there was a sufficient basis to award defendant the full amount of attorneys' fees and costs she requested. Plaintiff decided not to comply with the demand to withdraw her suit even though she was on notice that defendant had dispositive defenses of litigation privilege and judicial immunity. Consequently, we will not disturb the sanctions imposed.

To the extent we have not addressed any of plaintiff's arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

16