285 N.J. Super. 230 (1995)
666 A.2d 1006
JESSE ROSENBLUM, PLAINTIFF-APPELLANT/CROSS-RESPONDENT,
v.
BOROUGH OF CLOSTER, DEFENDANT, THIRD PARTY PLAINTIFF/RESPONDENT,
v.
MIELE SANITATION COMPANY, THIRD PARTY DEFENDANT, RESPONDENT/CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 11, 1995.
Decided November 13, 1995.
*232 Before Judges MICHELS, VILLANUEVA and KIMMELMAN.
*233 Corinne M. Mullen argued the cause for appellant/cross-respondent (Ms. Mullen, attorney, of counsel and on the brief).
James A. Farber argued the cause for respondent Borough of Closter (DeCotiis, Fitzpatrick & Gluck, attorneys; Judy A. Verrone, of counsel and on the brief).
Kathryn A. Gilbert argued the cause for respondent/cross-appellant Miele Sanitation Company (Ms. Gilbert, attorney, of counsel and on the brief).
The opinion of the court was delivered by VILLANUEVA, J.A.D.
Plaintiff Jesse Rosenblum appeals from orders in two actions awarding attorney fees against him pursuant to the frivolous litigation statute, N.J.S.A. 2A:15-59.1 (the Statute). The actions were consolidated on the applications for attorney fees. Miele Sanitation Company (Miele) cross appeals from the denial of his motion for attorney fees pursuant to the Statute in one of the actions.
The first action, referred to as the "land transfer" action, was brought against all interested parties and challenged the transfer of land by the Borough of Closter (Borough or Closter) to Joseph Miele and Gloria Miele (the Mieles). Although the land was zoned for residential purposes, plaintiff alleged that the Mieles purchased it for use in an industrial waste operation. The court dismissed this complaint as woefully late and upon Closter's motion, granted Closter frivolous litigation fees of $4,331.21. On appeal, the Appellate Division affirmed both the dismissal of plaintiff's underlying complaint and the award of attorney fees to Closter against plaintiff and, upon Closter's motion, awarded it attorney fees of $1,500 and disbursements of $471.53 pursuant to the Statute for plaintiff's frivolous appeal. Subsequently, the Supreme Court granted plaintiff's petition for certification and "summarily remanded [the matter] to the Appellate Division for reconsideration [of the attorney fee award] in light of McKeown-Brand *234 v. Trump Castle Hotel and Casino, 132 N.J. 546, [626 A.2d 425] (1993)." The Appellate Division again affirmed, and the Supreme Court denied certification.
The second action is referred to as the "garbage contract" action. Under an agreement dated June 12, 1991, incorporating the settlement of a prior dispute between Miele and Closter, Miele agreed to provide solid waste transfer station services to Closter for two years at a fixed rate for all waste types, notwithstanding the fact that Miele's cost to dispose of Closter's bulky waste might exceed the fixed rate charged to Closter. In this action, although plaintiff sought to set aside the contract, he sued only the Borough, deliberately omitting Miele as a defendant, allegedly because of a pending defamation suit brought by Miele against him. The garbage contract complaint alleged that the Borough's acceptance of a new contract with Miele "is injurious to the taxpayers of Closter ... [because] the new contract forgives any funds or interest due the Borough from the prior contract." Plaintiff sought to have "the new contract, in that portion which forgives funds due the Borough on the prior contract" declared invalid and sought to require the Borough to recoup such funds.
Prior to agreeing to this settlement, Closter considered the alternatives of pursuing legal action to recoup from Miele approximately $42,000 in alleged overpayments, as well as performing solid waste disposal services itself. Closter rejected these alternatives on three grounds. First, after thorough study of the matter, including a public hearing at which time plaintiff's objections were considered, Closter decided that it would not be cost effective to conduct its own solid waste disposal services because of the costs associated with the acquisition of additional facilities, the purchase of necessary equipment and the prohibitive costs of hiring of personnel.
Second, when Closter had offered the new contract for bid in the preceding November, there were no bidders. A rebid failed to elicit any response. As Borough Councilman Farber explained:

*235 So our alternative was to either negotiate with Mr. Miele, who was the only contractor that was interested, or to start buying our own facilities, our own equipment, to do the work ourselves. The Council has made a policy decision that it is better to negotiate with Mr. Miele  which they feel is a good contract  and anyway, I feel it's a good contract.
Third, given the uncertainty of prevailing in a recoupment action against Miele, the Borough decided that legal action was inadvisable.
At the outset, we must examine the background of the relationship that existed between plaintiff and Miele when plaintiff initiated this complaint to determine why plaintiff filed suit to set aside the garbage contract, failed to name Miele as a party to the action either at the outset or upon receipt of Closter's answer noting this deficiency and conducted lengthy and aggressive discovery against Miele and Closter, yet permitted his complaint to be dismissed with prejudice for failure to answer one Interrogatory.
As plaintiff has reiterated in numerous certifications and briefs, for three and one-half years he and Miele were embroiled in a libel action[1] filed by Miele against plaintiff as the result of articles plaintiff published in his "community newsletter," the Informed Citizen in Closter (I.C.I.C.).
After Miele initiated the libel suit, plaintiff filed numerous complaints and court actions implicating Miele, including the land transfer and garbage contract cases and a challenge to Miele's farmland assessment and demand for rollback taxes.[2] Additionally, plaintiff challenged a Department of Environmental Protection permit issued to Miele and lodged numerous complaints against him and his company with local, county, state and federal agencies *236 for incidents dating back to mid-1988.[3] Finally, plaintiff's own certification attests to his enmity for Miele: "Not only is Miele the Borough Bully, who was found guilty of criminally assaulting Rosenblum and Hoppe (and hijacking their vehicle to subsequently claim a trespass), but a totalitarian Big Brother."
Plaintiff's putative purpose for commencing the garbage contract action and pursuing what he has consistently characterized as a "public interest" action was to compel the Borough to "recover an overcharge approximating $42,000 from Miele." When the case initially came on for trial on July 7, 1992, the trial judge declared a mistrial because of plaintiff's failure to prepare his case. Despite the trial judge's warning that plaintiff faced a difficult burden of proof, plaintiff vigorously continued to pursue the garbage contract action, engaging in extensive discovery with reference to both Closter and Miele for the next twenty months.[4] However, when plaintiff spent seven months opposing a trial court order requiring him to answer one Interrogatory propounded by Miele  including filing at least three motions in the Law Division and six interlocutory motions in the Appellate Division, which were all denied  the trial court sanctioned plaintiff's conduct. It *237 also awarded Closter fees pursuant to R. 4:17-5(d), which are not the subject of this appeal.
As a justification for filing the law suit, plaintiff has asserted that Closter's decision to settle the overcharge dispute with Miele was detrimental to the interests of Borough taxpayers, but nonetheless he sued only Closter. The basis of plaintiff's action was a conclusory allegation of "chicanery and corruption between Miele and Closter officials, including the $42,000 overcharge by Miele on the garbage contract." Closter asserted in its answer that it had exercised its judgment pursuant to N.J.S.A. 59:2-3 and 59:3-2 and that plaintiff had failed to join an indispensable party, Miele, without whom the action could not proceed. See R. 4:28-1(a).
Closter filed a third party complaint against Miele, not because it doubted the wisdom of the settlement, but because it then could still pursue its claim of overcharges against Miele in the event the settlement was set aside by the court. This was a required pleading under R. 4:30A; otherwise, Closter would have been barred by the entire controversy doctrine from later pursuing this claim.
At least as early as August 1992, plaintiff was aware that even if he succeeded in having the Borough recoup the entire $42,000, that amount would have been reduced by Closter's legal fees which at that point were by plaintiff's own calculations approximately $29,000. Ultimately, plaintiff's persistence in pursuing this "public interest" lawsuit cost Closter almost $38,000[5] to defend.
On October 27, 1992, plaintiff was ordered to answer Miele's Supplemental Interrogatory No. 1 within twenty days and if he failed to do so, "plaintiff's complaint against Defendant [Borough of Closter] and the third party complaint against third party defendant shall be dismissed without prejudice; said dismissal to be effective on the twentieth (20th) day following the day of this *238 Order without further notice." By order dated March 19, 1993, the court, pursuant to R. 4:23-5(a)(2), converted the October 27, 1992, order of dismissal without prejudice into a dismissal with prejudice for plaintiff's failure to comply with the discovery.
Closter subsequently filed a motion in the garbage contract action seeking attorney fees and litigation costs pursuant to the Statute in the amount of $32,882.23.[6] On September 24, 1993, the trial court granted Closter's motion.
The Mieles originally made no application for attorney fees in the land transfer case, but instead made one motion for fees pursuant to the Statute for both actions at the conclusion of the garbage contract case. On October 21, 1993, the trial court awarded the Mieles attorney fees pursuant to the Statute against plaintiff in the amount of $4,271.75 for the land transfer case. However, it denied Miele's request for attorney fees of $9,012.50 for the garbage contract case because "Miele Sanitation Company was not named as a direct Defendant by Plaintiff Jesse Rosenblum."

I.
Plaintiff challenges the award of attorney fees to the Mieles in the land transfer case.
Sometime in 1988, Joseph Miele proposed that the Borough consider a sale of certain Borough-owned land. After extensive public hearings, the Mayor and Council adopted resolutions authorizing the sale of the property. After rejecting two private bids (one from Miele and one from plaintiff herein), the Borough offered the property at a public sale. It received only one bid, that of the Mieles for $126,000, which was found to be in order and accepted by the Borough.
*239 More than two years later, plaintiff filed a verified complaint in lieu of prerogative writs seeking to rescind the sale to the Mieles, which named both Closter and the Mieles as defendants. The trial court dismissed the complaint as woefully late, and awarded frivolous litigation fees to Closter in the amount of $4,331.21, both of which orders were upheld on appeal.
Upon the Mieles' application for attorney fees pursuant to the Statute, the trial court properly decided that its original finding as to the frivolous nature of the complaint was the law of the case. Khoudary v. Salem County Bd. of Social Servs., 281 N.J. Super. 571, 575, 658 A.2d 1317 (App.Div. 1995). The judge noted: "I have already made substantial findings about the nature of [plaintiff's] behavior with respect to this case and how egregious it was." At the hearing, plaintiff offered no evidence to indicate that his claims against the Mieles were any different than those he asserted against Closter, nor could there have been any such evidence since all defendants were equally affected by plaintiff's frivolous complaint. The trial court properly awarded the Mieles' attorneys $4,271.75 for the filing of this frivolous complaint.
We, therefore, affirm the trial court's order awarding frivolous litigation fees to the Mieles in the land transfer case.

II.
Plaintiff also challenges the award of attorney fees to Closter in the garbage contract action.
Citizens should have ready access to all branches of government, including the judiciary. McKeown-Brand v. Trump Castle Hotel & Casino, supra, 132 N.J. at 561-62, 626 A.2d 425 (citing Iannone v. McHale, 245 N.J. Super. 17, 27, 583 A.2d 770 (App.Div. 1990)). Unless a litigant knows, or should know, that a complaint is without reasonable basis, N.J.S.A. 2A:15-59.1a(2), he or she should not be deterred from filing a complaint which challenges the action of a public entity or public official. We do not suggest, however, that a citizen who questions a governmental *240 decision not to pursue a claimed overcharge without considering purported valid reasons therefor should be subject to frivolous litigation fees for filing a complaint against all indispensable parties to compel governmental action.
However, when a plaintiff deliberately fails to name an indispensable party even after immediately being specifically informed of this deficiency, see R. 4:28-1(a), and continues extensive discovery for twenty months for a cause of action that clearly cannot succeed, that plaintiff is subject to being assessed attorney fees under the Statute.
Plaintiff's claim could not have been adjudicated without the presence of Miele in this suit. See Iannone v. McHale, supra, 245 N.J. Super. at 30-31, 583 A.2d 770 (holding that the candidate whose election is challenged is a necessary party to an action seeking to nullify the election results). Moreover, considering plaintiff's actions on an objective basis, Khoudary v. Salem County Bd. of Social Servs., 260 N.J. Super. 79, 88, 615 A.2d 281 (App.Div. 1992) (citing Iannone v. McHale, supra, 245 N.J. Super. at 29, 583 A.2d 770), no reasonable person would believe that he or she could rescind a party's contract without joining that party in the action. See Fagas v. Scott, 251 N.J. Super. 169, 189, 597 A.2d 571 (Law Div. 1991) (holding that a claim is frivolous or groundless where no rational argument can be advanced in its support, or it is not supported by any credible evidence, or a reasonable person could not have expected its success, or it is completely untenable).
Plaintiff's reliance on McKeown-Brand to shield him from application of the Statute is misplaced. McKeown-Brand v. Trump Castle Hotel & Casino, supra, 132 N.J. 546, 626 A.2d 425. In that case, the Supreme Court specifically stated that the Statute cannot be applied against attorneys or parties who rely on their attorneys. Id. at 557-558, 626 A.2d 425. Except with respect to a discovery matter,[7] plaintiff acted pro se. He did not *241 rely upon the advice of any attorney until the applications for frivolous litigation attorney fees were made.
There are two instances in which, if the judge finds "on the basis of the pleadings, discovery, or the evidence presented" that "a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous," the Statute authorizes an award of reasonable attorney fees and litigation costs to a prevailing party. N.J.S.A. 2A:15-59.1. The first is where the "complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury." N.J.S.A. 2A:15-59.1b(1). The second justification exists where the judge determines that "[t]he non-prevailing party knew, or should have known, that the [pleading] was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." N.J.S.A. 2A:15-59.1b(2).
Here, the trial court expressly determined that plaintiff's garbage contract complaint was frivolous under the latter circumstance, i.e., that it lacked a reasonable basis. In awarding frivolous litigation fees the trial judge found that there was not a scintilla of evidence that the Borough's actions were arbitrary, capricious or fraudulent. He found instead that plaintiff simply opposed the settlement and therefore sued "these people [to] run up a bill that's $32,000 in an effort to save him 49 [sic]."
Procedural rules are not abrogated or abridged by plaintiffs pro se status. This point was emphasized by this court in Tuckey v. Harleysville Ins. Co., 236 N.J. Super. 221, 224, 565 A.2d 419 (App.Div. 1989), when we stated:
Litigants are free to represent themselves if they so choose, but in exercising that choice they must understand that they are required to follow accepted rules of *242 procedure promulgated by the Supreme Court to guarantee an orderly process. Such litigants are also presumed to know, and are required to follow, the statutory law of this State.
The judge found here that "plaintiff, though not a lawyer, is not unfamiliar with the legal system in this county and this state." The judge pointed out that "this plaintiff engaged in serious and aggressive discovery" in "litigation [which] from the beginning [was] frivolous" and "was filed without any hope of a serious recovery." Realistically, "no reasonable person could have expected its success." Having so determined, there was no need for the trial court to decide the issue of plaintiff's bad faith.
There is absolutely no evidence that the Borough acted arbitrarily, capriciously or fraudulently. It merely acted in a manner with which plaintiff disagreed. Moreover, Closter consistently maintained that the settlement was reached after it gave due consideration to other alternatives, i.e., pursuing legal action to recoup any overcharge and undertaking its own solid waste disposal services, but rejected those alternatives as uncertain and too costly.
Although the trial court offered plaintiff the opportunity to have a hearing on the issue of his state of mind, plaintiff declined. Plaintiff has never indicated that he was unaware that he could not obtain relief without suing Miele nor that he was unfamiliar with the law that municipal action cannot be reversed unless it was arbitrary, capricious or unreasonable.
Contrary to plaintiff's argument that the trial court concluded that plaintiff's litigation was frivolous because it had been dismissed for failure to provide discovery, plaintiff's complaint was deemed frivolous because it lacked any reasonable basis in law or in equity. More precisely, plaintiff failed to articulate how or why Closter's actions were arbitrary, capricious or fraudulent. He allegedly believed that his judgment was better for Closter than was the collective judgment of its elected officials. What makes plaintiff's filing of the complaint even more egregious is that relief *243 was impossible, since he deliberately failed to name an indispensable party.
There is ample evidence to support a reasonable inference, as Closter argues, that plaintiff's enmity for Miele provided the initial impetus for this lawsuit and was the driving force behind its continuance. Unfortunately, Closter was the vehicle that plaintiff used to carry out this vendetta. Not only was plaintiff's complaint initiated without any basis in law or in equity, it was continued for twenty months during a period when plaintiff knew or should have known, using either a subjective or objective standard, that there was no legal or equitable basis for it.
Plaintiff's complaint was frivolous under N.J.S.A. 2A:15-59.1b(2) and, therefore, we find it unnecessary, as did the trial court, to determine whether it was also frivolous under N.J.S.A. 2A:15-59.1b(1). We affirm the trial court's order awarding attorney fees and litigation costs to Closter.

III.
In the garbage contract case, Miele Sanitation Company cross-appeals from the order which denied it frivolous litigation attorney fees solely because plaintiff did not name Miele as a direct defendant.
The garbage contract case cannot be viewed in a vacuum but must be assessed against the backdrop of the extensive history between the parties. When plaintiff initiated the complaint, he did not mention Miele except by reference, calling it a "solid waste transfer station facility." Plaintiff had told the court at oral argument that he did not specifically name Miele because of Joseph Miele's pending defamation action, discussed supra, and plaintiff's fear that including Miele in this action would have been used against plaintiff in the libel case. However, since plaintiff's complaint dealt solely with a specific transaction between Closter and Miele and because the relief sought required Closter to recoup funds allegedly due to it from Miele, Closter set forth as a *244 separate defense that Miele was an indispensable party and joined Miele by third party complaint.
Thereafter, plaintiff fully litigated and participated in reciprocal discovery with Miele. It was Miele, for example, which had plaintiff's complaint stricken for plaintiff's failure to answer one Interrogatory propounded by Miele. It was only when the issue of frivolous litigation attorney fees was addressed that plaintiff raised the defense that Miele was not named a direct defendant and therefore should not be awarded frivolous litigation attorney fees. The trial judge indicated in his oral opinion that, but for the narrow construction of the McKeown-Brand case, he would have awarded attorney fees to Miele.
Plaintiff now seeks to use his intentional failure to name a necessary and indispensable party to bar Miele from relief under the Statute. It is tortured logic to permit plaintiff to fully participate in reciprocal discovery with Miele and in every other aspect of the legal proceeding, and then be able to hide behind the defense that he did not name Miele as a party to the proceeding. Plaintiff knew of the legal standard of proof (which he never denied), yet chose to completely ignore it in his attempt to destroy Miele's contract rights.
It would be contrary to the legislative intent in adopting the Statute, and inherently unfair, to permit plaintiff to escape from having attorney fees assessed against him despite discovery because plaintiff deliberately did not name Miele. Without question, Miele has suffered the hardship of the frivolous litigation instituted by plaintiff.
A plaintiff initiating a law suit is not immune from frivolous litigation sanctions simply by scrupulously avoiding naming an indispensable party to the suit. The plaintiff who deliberately fails to name an indispensable party to a frivolous law suit can reasonably expect the named defendant to make a third party complaint against the indispensable party, particularly where, as here, no relief can be obtained without that party. R. 4:28-1(a).
*245 The Statute indicates that fees may be awarded to "[a] party who prevails ... against any other party." N.J.S.A. 2A:15-59.1a. The relief that plaintiff sought was to rescind Miele's contract. Regardless of the fact that plaintiff deliberately did not join Miele as a direct defendant, Miele was a party and Miele prevailed against plaintiff who was unsuccessful in attempting to set aside Miele's contract.
The Legislature clearly intended to have a party compensated for defending frivolous litigation, whether or not he, she or it was deliberately omitted as a direct defendant. Therefore, Miele is entitled to recover attorney fees from plaintiff pursuant to the Statute for defending the garbage contract action.
Because we have all the necessary information to determine the reasonable attorney fees incurred by Miele, and plaintiff has never questioned the reasonable value thereof, we exercise original jurisdiction in this matter, R. 2:10-5, and determine, based upon Miele's attorney's certification of services, the amount payable by plaintiff to Miele for attorney fees in the garbage contract case to be $9,012.50.
We affirm the two orders awarding attorney fees and costs. We remand to the trial court to enter an order awarding Miele $9,012.50 against plaintiff.
NOTES
[1] The libel action was filed in June 1988 and concluded in plaintiff's favor in December 1991.
[2] The Tax Court invalidated farmland status for 1991 but declined to impose rollback taxes.
[3] The record indicates that plaintiff made at least 128 complaints, either in newspaper articles or letters to various people and entities, including governmental agencies, regarding Miele. The governmental agencies included three municipalities, as well as the Bergen County Soil Conservation District, Bergen County Utilities Authority, Bergen County Prosecutor, Bergen County Board of Taxation, Attorney General of New Jersey, New Jersey Department of Agriculture, New Jersey Department of Environmental Protection, New Jersey Division of Taxation, United States Environmental Protection Agency, United States Army Corps of Engineers, United States Fish and Wildlife Service and the Federal Bureau of Investigation.
[4] Plaintiff deposed Harry Lampman, Closter DPW Superintendent, and Joseph Miele; he attempted to depose Councilman Bruce Litt, but was precluded by a protective order granted to Closter; he also attempted to depose Loretta Castano, Borough Clerk, and Harold Benel, Closter's Building Inspector, but relented when Closter objected as to relevancy. Further, he demanded and reviewed voluminous Borough documents.
[5] This amount was reduced by approximately $5,000 by virtue of two awards of attorney fees to Closter as a result of plaintiff's frivolous conduct on certain other issues in this matter.
[6] This amount did not include the attorney fees incurred as a result of plaintiff's frivolous opposition to discovery, for which Closter received an earlier award.
[7] Actually, plaintiff had been advised by an attorney to answer this one Interrogatory despite his defense of the Shield Law and First Amendment privilege. This attorney, who specializes in this area of the law, advised plaintiff that those defenses were inapplicable to our discovery rules and had advised him to answer the Interrogatory. Despite the attorney's correct advice, plaintiff persisted for seven months in his refusal to answer the Interrogatory.