# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4544-17T2

B.L.F.,

    Plaintiff-Respondent,

v.

T.G.C.,

    Defendant-Appellant.

_____

Submitted April 29, 2019 – Decided May 21, 2019

Before Judges Haas and Susswein.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket No. FV-19-0406-18.

Paris P. Eliades Law Firm LLC, attorneys for appellant (Gretchen Fry Rafuse, on the brief).

Respondent has not filed a brief.

PER CURIAM

Defendant T.G.C. appeals from a final restraining order ("FRO") entered against him pursuant to the Prevention of Domestic Violence Act of 1991

("PDVA"), N.J.S.A. 2C:25-17 to -35, based on assault, N.J.S.A. 2C:12-1(a), harassment, N.J.S.A. 2C:33-4(a), and stalking, N.J.S.A. 2C:12-10(b). We affirm the grant of the FRO insofar as it based on the predicate offense of assault, but reverse the trial court's findings that defendant committed the predicate acts of harassment and stalking. We remand the case solely for the purpose of amending the FRO to delete the references to the harassment and stalking predicate acts. In all other respects, the FRO based upon assault is affirmed.

I.

To obtain a FRO under the PDVA, a plaintiff must establish two key elements by a preponderance of the evidence. First, a plaintiff must prove that defendant committed one of the predicate offenses enumerated in N.J.S.A. 2C:25-19(a). Second, if a predicate offense is shown, plaintiff must show that a restraining order is necessary for the protection of the victim. Silver v. Silver, 387 N.J. Super. 112, 127 (App. Div. 2006).

B.L.F. and defendant T.G.C. were involved in a short-lived, on-and-off dating relationship. The trial court found that from the start, defendant sought to exercise power and control over plaintiff. Defendant, for example, came uninvited and unannounced to plaintiff's home, her gym, and to restaurants while she was socializing with other friends. The ill-fated courtship culminated with

a physical altercation in the parking lot of a fitness gym during which defendant grabbed plaintiff by her arm in a manner that caused, as the trial judge found, "obvious injuries and bruises."

For purposes of this appeal, we focus on that physical altercation. According to plaintiff's testimony, she saw defendant approaching the parking lot as she was getting into her car. Plaintiff waited for him to come over. She was upset because defendant previously appeared unexpectedly at various locations where she was at. Plaintiff told defendant that she did not want to talk to him and she started to roll up the car window. Defendant pushed down on the window, keeping it from closing. Both of them were screaming at each other and plaintiff testified that by this point in the encounter, she had become extremely scared because defendant was in "an absolute rage." Plaintiff began backing up her vehicle when defendant grabbed her left forearm. She testified that she experienced pain and suffered bruises that were depicted in a photograph that was introduced into evidence.

Defendant offered a different version of the encounter. He testified that his arm got stuck in the window, plaintiff started driving, was calling him "psycho," and was punching his hand. He testified that plaintiff eventually let

A-4544-17T2

the window down "maybe a centimeter" and started driving again, at which point defendant let go and slid to the ground.

The trial judge found plaintiff to be a "truthful and credible witness" and found "plaintiff's testimony to be far more credible than that of the defendant." The court observed that while defendant made good eye contact and was well spoken, "there were contents of his statements that simply defy logic and common sense." With respect to the physical altercation in the parking lot, the judge found that defendant's version was not credible, noting, "[t]he suggestion that somehow, for example, she rolled up the window too fast, that he was unable to get his arm out, just defies logic." The trial judge in rejecting defendant's version also commented that, "those bruises [on the plaintiff depicted in the photograph] don't come from somebody who is trying to get, get their arm out of the vehicle."

## II.

The scope of appellate review of a FRO is limited. A Family Part judge's fact-finding is binding on appeal when supported by adequate, substantial, credible evidence. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Deference to a trial judge's findings in a domestic violence matter is especially appropriate when, as in the case before us, the evidence is largely testimonial in nature and

A-4544-17T2

involves questions of credibility. Id. at 412. This is so because the trial judge has the opportunity to see and hear the witnesses as they testify, thereby developing a "feel for the case" that can never be realized by a review of the cold record. Ibid.

The deference we give to a trial judge's fact-finding in domestic violence cases also acknowledges the expertise of Family Part judges, who routinely hear domestic violence matters. Id. at 413. An appellate court should not disturb the "factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. at 412.

The trial judge in this case issued a thorough, detailed, and well-reasoned oral opinion. The judge carefully linked his factual findings to the various domestic violence offenses charged in the complaint. The court concluded that plaintiff had not established that defendant committed the alleged act of criminal mischief. The court did find, however, that plaintiff had proved by a preponderance of the evidence that the defendant committed the predicate acts of assault, harassment, and stalking.

The trial court also found that plaintiff met the second prong of the two-part <u>Silver</u> test by demonstrating that a FRO was needed to protect her from future acts of domestic violence.  The trial judge concluded that "with the type of power and control that the defendant has attempted to exert upon her throughout this very short-term relationship, a final restraining order is necessary to protect the plaintiff from the immediate danger and further acts of abuse that the defendant would likely carry out."

III.

On appeal, defendant raises the following contentions:

I. POINT ONE:  THE COURT ERRED IN PERMITTING THE PLAINTIFF TO TESTIFY ABOUT EVENTS THAT WERE NOT CONTAINED IN THE COMPLAINT.

II. POINT TWO:  THE TRIAL COURT ERRED IN FINDING THE DEFENDANT HAD THE REQUISITE INTENT TO COMMIT THE PREDICATE ACT OF HARASSMENT UNDER N.J.S.A. 2C:34-4.

III. POINT THREE:  THE TRIAL COURT ERRED IN FINDING THE DEFENDANT COMMITTED HARASSMENT UNDER N.J.S.A. 2C:33-4(A) BECAUSE THE DEFENDANT WAS NO [SIC] ENGAGING IN THE PROHIBITED COMMUNICATION AS PER THE STATUTE.

IV. POINT FOUR:  THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANT COMMITTED THE PREDICATE ACT OF STALKING BECAUSE

6

THE DEFENDANT'S ACTIONS ON APRIL 23 AND APRIL 29 DID NOT CONSTITUTE A "COURSE OF CONDUCT" AS REQUIRED BY THE STATUTE.

V. POINT FIVE: THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANT COMMITTED THE PREDICATE ACT OF STALKING BECAUSE THE DEFENDANT'S ACTIONS ON APRIL 23 AN APRIL 29 WOULD NOT "CAUSE A REASONABLE PERSON TO FEAR FOR HER SAFETY OR SUFFER OTHER EMOTIONAL DISTRESS."

VI. POINT SIX: THE TRIAL COURT ERRED IN FINDING THE DEFENDANT COMMITTED THE PREDICATE ACT OF ASSAULT BECAUSE THERE WAS NO INTENT TO CAUSE BODILY HARM.

VII. POINT SEVEN: THE TRIAL COURT ERRED IN NOT HAVING TOLERANCE FOR THE DEFENDANT'S BEHAVIOR AS A DISAPPOINTED SUITOR PER SWEENY V. HONACHEFSKY, 313 N.J. SUPER. 443 (APP. DIV. 1998).

VIII. POINT EIGHT: THE TRIAL COURT ERRED IN THE FINDING THAT A DOMESTIC VIOLENCE RESTRAINING ORDER WAS NECESSARY TO PROTECT THE VICTIM FROM AN IMMEDIATE DANGER OR TO PREVENT FURTHER ABUSE UNDER THE SECOND PRONG OF SILVER V. SILVER, 387 N.J. SUPER. 112 (APP. DIV. 2006).

We have considered defendant's contentions on appeal in light of the record and applicable legal principles and conclude that all but one are without

sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).[1]

The one contention that warrants a more fulsome discussion pertains to defendant's argument in Point I of his brief that the trial court improperly allowed plaintiff to testify about two unplanned encounters that were not specifically identified in the amended complaint.  We conclude that it was improper for the trial court to consider testimony concerning these two additional episodes without asking the defendant whether he needed time to prepare a response to those new allegations.  It is not clear on this record whether and to what extent plaintiff's testimony concerning these additional incidents may have affected the trial's court's conclusions with respect to the harassment and stalking predicate offenses.  It is clear, however, that plaintiff's testimony about these two additional incidents would have no effect on the trial court's findings with respect to the assault predicate offense and the need for a FRO based on that assault.

In J.D. v. M.D.F., 207 N.J. 458 (2011), the Supreme Court confirmed that "ordinary due process protections apply in the domestic violence context, notwithstanding the shortened time frames for conducting a final hearing."  Id.

---

[1]  In view of our decision to vacate the predicate offenses of harassment and stalking based on the argument that defendant makes in Point I of his brief, the issues raised by defendant in Points II, III, IV, and V are moot.

at 478. "At a minimum, due process requires that a party in a judicial hearing receive 'notice defining the issues and an adequate opportunity to prepare and respond.'" Ibid. (quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559 (1993)). Accordingly, due process "forbids the trial court 'to convert a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of domestic violence which are not even alleged in the complaint.'" Ibid. The Court in J.D. nonetheless recognized that plaintiffs seeking protection under the PDVA often "expand upon [the] history of prior disputes when appearing in open court" and the Court acknowledged that trial judges often will "attempt to elicit a fuller picture of the circumstances[.]" Id. at 479.

In domestic violence cases where one or both parties are not represented by counsel at the FRO hearing, it often is necessary for the trial judge to take a lead role in posing questions to the parties when they testify. Otherwise, a pro se party's direct examination might consist of a rambling narrative, unbounded by questions that serve to focus a litigant's testimony on relevant circumstances and help to ensure that only competent, admissible (e.g., non-hearsay) evidence is proffered.

The Court in J.D. explained that judges should "use the allegations set forth in the complaint to guide their questioning of plaintiffs." Id. at 479. The Court warned judges to avoid posing the sort of questions that would induce a plaintiff to "abandon the history revealed in the complaint in favor of entirely new accusations." Ibid.

The record in this case hardly suggests that the trial judge posed questions that induced plaintiff to "abandon" the allegations in the amended complaint in favor of entirely new allegations. On the contrary, most of the judge's questions sought to elicit plaintiff's testimony about incidents that were specified in the amended complaint, and for the most part, plaintiff's testimony related to the predicate acts and past history of domestic violence averred in the complaint. Cf., J.F. v. B.K., 308 N.J. Super. 387, 391 (App. Div. 1998) (trial court improperly granted a FRO based not on the act of domestic violence alleged in the complaint but rather on a course of prior conduct that, with the exception of one incident, was not even mentioned in the complaint).

The trial judge nonetheless posed a question that was reasonably likely to invite testimony about allegations not found in the amended complaint when the judge asked plaintiff, "Were there other places and times when the defendant appeared without notice?" This question did not focus plaintiff's attention to the

A-4544-17T2

dated events enumerated – in the amended complaint and thus unwittingly prompted plaintiff to discuss an unplanned encounter with defendant at a tavern – an episode that was not mentioned in the amended complaint. Toward the end of plaintiff's testimony, the judge also asked her, "Do you have any additional testimony for the Court to consider that you've not already provided?" Plaintiff responded by discussing yet another incident not mentioned in the amended complaint where, according to plaintiff's testimony, defendant followed plaintiff and her friends a considerable distance from one restaurant to another.

We see nothing improper in the trial judge's question concerning any other incidents when defendant appeared unexpectedly, much less the judge's more generic question concerning any other evidence that plaintiff might want to proffer. As to the former question, although it did not focus her attention to an event specifically mentioned in the amended complaint, it seems to have been geared to "elicit a fuller picture of the circumstances" as contemplated by the Supreme Court in J.D., 207 N.J. at 479. The latter omnibus question, moreover, seems appropriate to ensure that an unrepresented plaintiff has tendered all relevant evidence. Our concern, therefore, is not that these questions were asked, but rather with how the trial court responded to plaintiff's answers.

The Court in J.D. took pains to explain that trial courts do not have to limit a plaintiff's testimony to "the precise prior history revealed in the complaint" because testimony may reveal additional prior events. Ibid. However, the Court in J.D. emphasized that a trial court "must recognize that if it allows that history to be expanded, it has permitted an amendment to the complaint and must proceed accordingly." Id. at 479-80.

How a court should proceed at that point will depend on the circumstances. As the Court in J.D. noted, some defendants may be well-prepared to respond to additional allegations while others may not. Id. at 480. The Court cautioned, however, that "in all cases the trial court must ensure that defendant is afforded an adequate opportunity to be apprised of those allegations and to prepare." Ibid. (emphasis added).

In this case, defendant posed no objection to the court's questions or to plaintiff's answers. Nor did defendant ask for more time to prepare a response to plaintiff's testimony concerning either additional encounter, even though he ostensibly knew that he could ask for more time based upon his colloquy with the judge earlier that day after plaintiff formally amended the complaint to

A-4544-17T2

include additional allegations.[2] We are not prepared, however, to assume that a pro se defendant impliedly waived the right to ask for more time to respond to new allegations.

In his own testimony, moreover, defendant specifically responded to plaintiff's allegations regarding the additional incident at the tavern, but did not respond to the additional incident during which he is alleged to have followed plaintiff and her friends from one restaurant to another. That at least suggests the possibility that defendant may not have been prepared to respond to the latter allegation.

Applying the principles set forth in J.D. to the case before us, we believe that the trial judge should have treated plaintiff's testimony about the two additional incidents as the functional equivalent of another amendment to the complaint. The judge therefore ought to have conducted a colloquy with defendant like the one that took place earlier that day, see footnote 2,

---

[2] On the morning of the FRO hearing, plaintiff amended her complaint to add what the trial court described as "significant information about predicate acts, as well as, going from no prior domestic violence history to including information about domestic violence history." The court addressed defendant and asked him if he was "in a position to be able to adequately respond to all those [new] allegations." Defendant answered in the affirmative. The FRO hearing was heard that afternoon.

A-4544-17T2

establishing for the record whether defendant needed more time to prepare a response to those additional allegations.

In rendering his oral opinion, the trial judge discussed both additional encounters. We therefore cannot say based on the record before us whether and to what extent those incidents contributed to the factual basis for the judge's decision to find that defendant had committed the predicate offenses of harassment and stalking, since both of those offenses may entail multiple events constituting a course of conduct. We see no need to remand this case for clarification by the trial court, however, because the failure to afford defendant the opportunity to ask for an adjournment to prepare to address the additional incidents was harmless with respect to the predicate offense of assault.

We are satisfied in this regard that plaintiff's testimony concerning the two incidents not mentioned in the amended complaint had no bearing on the trial court's finding that defendant committed the predicate act of assault in the fitness gym parking lot. The trial judge explicitly rejected defendant's version of that particular incident, finding that defendant's testimony about that physical altercation defied logic and was inconsistent with the bruises the victim sustained as shown in the photograph admitted into evidence.

A-4544-17T2

Furthermore, the trial court's consideration of plaintiff's testimony about the additional incidents would not affect the second <u>Silver</u> prong with respect to the assault predicate offense. When a judge finds that an act of physical violence has occurred, the need for entry of a FRO may be presumed. <u>See</u> <u>S.K. v. J.H.</u>, 426 N.J. Super. 230, 233 (App. Div. 2012). It is well-settled in this regard that the need for a restraining order in cases where physical violence is proven is "perfunctory and self-evident." <u>Silver</u>, 387 N.J. Super. at 127.

Only one predicate act need be proved to authorize a FRO, and we are satisfied that in this instance, the assault predicate act alone provides ample reason to afford plaintiff the protection of a restraining order. That being so, there is no reason to remand the case to determine whether, if the testimony regarding the two additional incidents were redacted, the trial court would have found that plaintiff proved by a preponderance of the evidence that defendant committed the predicate offenses of harassment and stalking.

For the foregoing reasons, out of an abundance of caution and to obviate the time, expense, and delay of a remand that would not in any event affect the ultimate decision to issue a FRO, we reverse the trial court's finding that defendant committed harassment and stalking. We affirm the trial court's finding that defendant committed assault and also affirm the trial court's ruling

15

that the issuance of the FRO is needed to protect the victim. We remand this case solely for the purpose of amending the FRO to delete references to the harassment and stalking predicate acts. Those amendments to the FRO have no effect on the restraints barring defendant from having any contact with plaintiff or on any other remedy ordered by the trial court pursuant to the PDVA.

Affirmed in part, reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16