# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1232-24

E.C.F.,

    Plaintiff-Respondent,

v.

A.K.,

    Defendant-Appellant.

_____

Submitted December 8, 2025 – Decided January 21, 2026

Before Judges Walcott-Henderson and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-2305-24.

Leah Lederberger, attorney for appellant.

Respondent has not filed a brief.

PER CURIAM

Defendant A.K.[1] appeals from a final restraining order ("FRO") entered against him pursuant to the Prevention of Domestic Violence Act ("PDVA"), N.J.S.A. 2C:25-17 to -35. After our careful review of the record and application of the pertinent legal principles, we affirm based on the cogent reasons expressed by Judge Martha T. Mainor in her thorough oral decision.

I.

The facts which follow were taken from the record. Plaintiff E.C.F. and defendant first became acquainted in February 2024, when plaintiff rented a room in defendant's residence in Jersey City. The parties resided as cohabitants on the first-floor unit of a two-family house, maintaining separate bedrooms and shared common areas. The parties cohabitated for a short time period, approximately one month from February 15, 2024, until plaintiff vacated the residence on or about March 20, 2024.

Plaintiff asserted that on March 17, 2024, defendant informed her he was suicidal. Later, during the early morning hours of March 18, plaintiff awoke to defendant attempting to enter her bedroom by using a credit card to pry open her locked door. Plaintiff testified that she was alarmed by this conduct in light of

---

[1] We use initials for the parties to protect the identity of the victim in these proceedings. R. 1:38-3(d)(10).

A-1232-24

alleged prior unwanted romantic advances by defendant. Defendant was unable to enter the room after several attempts and withdrew. The next morning, plaintiff discovered that her door lock was jammed due to the credit card used by defendant. Defendant subsequently texted plaintiff, apologizing and explaining that his intent was to take plaintiff's cell phone to prevent her from contacting authorities after he allegedly expressed suicidal thoughts.

On March 18, 2024, defendant sustained a dog bite at the shared residence. The parties disputed whether plaintiff's dog or defendant's dog was responsible. The event led to several text and email exchanges between the parties throughout the day, involving topics such as the dog, plaintiff's relocation plans, defendant's medication, household arrangements, and defendant's relationship with plaintiff.

In the evening of March 18, defendant knocked on plaintiff's bedroom door and jiggled the handle while allegedly yelling at plaintiff through the door. Plaintiff did not respond, and defendant left without further incident. Plaintiff produced a video at trial of this incident. On this same date, defendant began sending plaintiff multiple emails containing offensive language and personal insults. Defendant also purportedly contacted plaintiff's employer during this period. Plaintiff testified to experiencing alarm and annoyance due to the emails, messages, and defendant's actions.

A-1232-24

On March 20, 2024, plaintiff secured a TRO against defendant. Although the written complaint refers to the numerous unwanted and offensive text messages and emails that caused plaintiff distress, the complaint form does not specifically state certain emails were actually sent to her on March 19.

At the final hearing, defendant objected to the introduction of the March 19 emails he sent to plaintiff and the voicemail communications he made to plaintiff's employer, asserting this evidence was outside the explicit dates of the complaint and the consideration of this evidence would violate his due process rights as to proper notice. The court overruled his objections.

Plaintiff testified at the hearing, and the defendant chose not to testify. Following the presentation of all the evidence, the court found defendant's conduct constituted harassment under N.J.S.A. 2C:33-4. The court determined that the issuance of a FRO against defendant was warranted, citing both the offensive nature and the persistence of defendant's communications, as well as the likelihood of recurrence if an FRO is not granted.

On appeal, defendant contends the trial court erred by: (1) considering evidence and testimony concerning incidents not explicitly stated in the complaint in violation of his due process rights; and (2) finding there was a

sufficient factual and legal basis under the second prong of Silver[2] supporting its finding that plaintiff was in immediate danger of abuse.

## II.

The scope of appellate review of a Family Part court's findings following a bench trial is limited. N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015) (citing Cesare v. Cesare, 154 N.J. 394, 411 (1998)). We owe substantial deference to the Family Part's findings of fact because of its special expertise in family matters. Cesare, 154 N.J. at 413 (citations omitted). Such deference is particularly proper "when the evidence is largely testimonial and involves questions of credibility." Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).

We will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal conclusions and review such conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

---

[2] Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

The PDVA authorizes an FRO to be issued if two criteria are met. Silver, 387 N.J. Super. at 125. The plaintiff seeking the FRO must prove that (1) "one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred," and (2) that the order is necessary to protect plaintiff "from an immediate danger or to prevent further abuse." Id. at 125, 127.

A.

We first address defendant's contention his due process rights were violated by permitting testimony and evidence regarding emails sent to plaintiff that were not specifically set forth by a specific date in the complaint. Plaintiff asserts that because the basis of plaintiff's complaint does not specifically state she is relying upon emails dated March 19, 2024, he was denied adequate notice and an opportunity to mount a reasonable defense. We are not persuaded.

Due process requires "that a party in a judicial hearing receive 'notice defining the issues and an adequate opportunity to prepare and respond.'" H.E.S. v. J.C.S., 175 N.J. 309, 321 (2003) (quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559 (1993)). Without proper notice, "[t]here can be no adequate preparation where the notice does not reasonably apprise the party of the charges, or where the issues litigated at the hearing differ

substantially from those outlined in the notice." Id. at 322 (quoting Nicoletta v. N. Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 162 (1978)).

"[O]rdinary due process protections apply in the domestic violence context, notwithstanding the shortened time frames for conducting a final hearing." J.D. v. M.D.F., 207 N.J. 458, 478 (2011). To "ensur[e] that defendants are not deprived of their due process rights requires our trial courts to recognize both what those rights are and how they can be protected consistent with the protective goals of the [PDVA]." Id. at 479. In this context, due process requires that a "defendant is given a meaningful opportunity to defend [] a complaint" against them. D.N. v. K.M., 429 N.J. Super. 592, 606 (App. Div. 2013).

While allegations need not be exact, due process must be specific enough to provide defendant with meaningful notice of the claims against him, and a finding of domestic violence must be based upon the act or acts alleged in the complaint. See H.E.S., 175 N.J. at 324-25. "It constitutes a fundamental violation of due process to convert a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of domestic violence which are not even alleged in the complaint." Id. at 325 (internal citations omitted). In H.E.S., our Supreme Court held the defendant's due process rights were also

7

violated when he was forced to proceed with the FRO hearing, even "after [the] plaintiff alleged an incident of domestic violence not contained in the complaint." 175 N.J. at 324. In that case, the plaintiff asserted a completely new allegation of domestic violence less than twenty-four hours before the FRO hearing, and the judge denied defendant's request for an adjournment sufficient to allow him to formulate a defense to the new charges. Id. at 321.

After consideration of the record before us, we reject defendant's principal contention that because plaintiff's complaint did not explicitly note that some of the emails were dated March 19, their introduction was unexpected and deprived him of due process. Here, while the complaint does not specifically mention March 19, it states:

> [on] 3/18/2024 [defendant] made several communications via text, email, and in person in a manner which caused alarm and annoyance for [plaintiff] against [her] objections. Defendant repeatedly contacted plaintiff's prospective employers and coworkers to accuse [her] of being a thief and untrustworthy . . . .

In citing its reasons for considering these emails, the court stated:

> The complaint itself does not have to articulate every specific fact that is being alleged. It has to give an overall expression of the things that have occurred. [On] March 18, 2024, she indicates that he left several communications via text message and email. She has just testified that they started on the 18th and went all

8

the way through the 19th.  That's sufficient [notice] as far as this [c]ourt is concerned.

We note plaintiff's complaint specifically states her harassment claims were based, in part, on emails sent to her by defendant on March 17 and 18.  We conclude plaintiff's complaint adequately provided defendant with notice she intended to utilize emails sent to her from defendant to support her complaint.  Defendant's contention that emails from March 17-18 should only have been considered, despite being fully aware he sent plaintiff continuous emails beginning late on the night of March 18 into early morning on March 19, is an over-literal interpretation of the allegations in the complaint.   Defendant's argument that the court should cut off consideration of the email string at midnight of March 18 lacks logic and merit.  We conclude the court did not abuse its discretion in admitting the email string starting on March 18 and continuing into March 19 as defendant had proper notice that plaintiff may utilize emails exchanged between them as evidence at trial.

In addition, even if the court's consideration of these emails was error, we conclude the error was harmless.  Rule 2:10-2 directs reviewing courts to disregard "[a]ny error or omission . . . unless it is of such a nature as to have been clearly capable of producing an unjust result."  Known as the harmless error doctrine, that rule "requires that there be 'some degree of possibility that

[the error] led to an unjust result.'" State v. Scott, 229 N.J. 469, 483-84 (2015). The record reflects the court found other predicate acts of harassment were committed by defendant outside the emails of March 19. Those acts included defendant attempting to enter her locked bedroom in the late hours of March 17-18 without permission and sending several harassing texts to plaintiff on March 18.

Similarly, we reject defendant's contention the court erred by considering the voice message defendant left for plaintiff's employer based on lack of adequate notice in the complaint. At trial, plaintiff specifically presented and properly authenticated a recording of a message left on her work voicemail which she identified as defendant's voice. The message in pertinent part stated:

> [I]f you do get this, please get in touch with me at 201-240-[****]. She's been—(indiscernible) because I do have proof of her plotting to steal from you guys and I've heard some other things. So, yes, please get in touch.

Plaintiff's complaint stated: "[d]efendant repeatedly contacted plaintiff's prospective employers and coworkers to accuse [her] of being a thief and untrustworthy . . . ." We deem plaintiff's complaint stating this event occurred on March 18, not March 20, to be inconsequential. This allegation was specific

10

in nature.  We conclude appropriate notice was provided to defendant that enabled him to properly defend against this allegation.

B.

We now turn to defendant's contention the court erred because plaintiff's evidence was insufficient to show she was in "immediate danger of abuse," therefore failing to satisfy the second prong of Silver.

Concerning the second prong, the court specifically found:

> [Plaintiff] has indicated that she fears for her safety. That she's not sure what he's capable of doing; that he has made it clear to her that he is not going to stop.  She has indicated that she was fearful during the time that it occurred, but that she did not originally call the police and did not originally leave and was attempting to maintain some semblance of normalcy with him, because she was desperate and had no other place to go. But when the behavior became more erratic, when it involved him trying to get into her room sneakily to do only God knows what and then began with the text messages repeatedly [] and the emails . . . she decided that for her safety, she needed to vacate the premises and seek a restraining order.
>
> The [c]ourt is satisfied that a[n] [FRO] is necessary and appropriate to protect the victim from the immediate threat of domestic violence; that there is a threat to the plaintiff and/or her property and a likelihood of recurrence based on the messages, the threats to call the shelter regarding her dog and threats to have him urinate—have urination on her belongings, the threats to remove her belonging from the premises.  For all of

11

A-1232-24

those reasons, the [c]ourt is satisfied that a final restraining order is appropriate

Relevant to this appeal, when evaluating the second prong of <u>Silver</u>, a court must consider:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
> (2) The existence of immediate danger to person or property . . . .
>
> [N.J.S.A. 2C:25-29(a).]

We conclude defendant's argument lacks sufficient merit to warrant discussion in a written opinion and we affirm for the reasons set forth in Judge Mainor's thoughtful oral decision. <u>R.</u> 2:11-3(e)(1)(E). We add only that the court's finding that the second prong of <u>Silver</u> was met was based on substantial, credible evidence in the record, including (1) plaintiff was legitimately in fear of defendant based on her observation of plaintiff while testifying; (2) plaintiff had legitimate reasons to fear defendant because of his attempts to enter her bedroom without permission or notice to her by manipulating the lock on her door; and (3) defendant was not going to stop his harassing conduct through texts and emails to plaintiff without the entry of an FRO. We concur with these factual findings, which were manifestly supported by the record and substantiate the court's determination the second prong of <u>Silver</u> was met.

12

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division